## NANNIE JOHNSON v. THE STATE.

### No. 3040.　Decided January 18, 1905.

**1.—Murder in Second Degree—Evidence—Res Gestae—Accusation.**

Where a State's witness was permitted to testify: "I heard W. say to defendant after the killing that night, 'Nannie, you have killed Della,' and defendant turned round and did not say anything," which statement occurred but a short time after the homicide and was a direct accusation of defendant, there was no error.

**2.—Same—Defendant's Declarations and Conversation With Witnesses.**

Where a State's witness testified that he heard defendant say to the crowd, among whom were witness and one W., that she cut deceased with a white handled knife, and witness heard her talk to said W. and he to her, and heard him say to her, "What ever you do don't tell them that I gave you the knife"; and this occurred just after and a short distance from the scene of the killing, there was no error.

**3.—Same—Warning—Confessions.**

Where defendant had been warned by and stated to the officer that she killed the deceased with a knife and thought that deceased was going to kill her, and on the next morning was again warned by the same officer who sought to elicit some facts from her, when she desired to talk, but upon another request from the same officer in the afternoon of the same day without further warning, told him that one W. gave her the knife and told her to kill the deceased, the facts were so connected with the inquiries and warnings that the defendant must have had the warning in mind at the time of the second statement and the same was admissible.

**4.—Same—Insulting Conduct to Female Relative—Charge Refused.**

Where in a wordy altercation between defendant and deceased, the latter called defendant and two of her sisters who were present, bitches or damn bitches, the theory of insulting conduct toward a female relative was not involved and a special instruction embracing that rule was correctly refused.

**5.—Same—Charge of Court—Defense of Others.**

Where the evidence showed that the difficulty occurred between defendant and deceased, while two of the former's sisters were present, and in which defendant claimed she stabbed deceased while the latter was making an attack upon her with a poker, there was no error in refusing a charge to acquit defendant if she acted in defense of her sisters.

**6.—Same—Self-Defense—Charge of Court.**

Where the court charged on every phase of the law applicable to the theory of self-defense, there was no error in refusing special charges on that subject.

**7.—Same—Misconduct of Jury.**

Where it was shown that a casual remark was made by one of the jurors, after the verdict was found and the jury was waiting for the officer, expressing wonder why defendant had not testified; and another juror remarked upon the fact that he knew that defendant went further back than the witness stated, but that this remark was based upon the evidence in the case, and that this occurred after the jury had decided to find defendant guilty of homicide; and still another juror stated that he saw where the blood was, also after a verdict had been reached. Held that the jury did not receive evidence other than that adduced upon the trial of such character as would require a reversal.

**8.—Same—Fact Case.**

See opinion reciting evidence which is held fully sufficient to support a conviction of murder in the second degree.

Appeal from the District Court of Collin. Tried below before Hon. J. M. Pearson.

Appeal from a conviction of murder in the second degree; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

No brief of appellant has reached the reporter.

*Howard Martin*, Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—The trial of this case in the court below, resulted in a verdict of murder in the second degree, with a penalty of seven years in the penitentiary.

While the witness Blythe was testifying in behalf of the State, he was permitted to state, "I heard George Wilson say to defendant, after the killing that night, 'Nannie, you have killed Della,' and defendant turned around and did not say anything." The objection urged to this

testimony was its incompetency. If the testimony was admissible for any purpose this objection was too general. The general exception of incompetency or demurrer to evidence upon that ground will not be considered as sufficient, if the testimony admitted was admissible for any purpose connected with the case. But we believe this testimony was clearly admissible. It occurred but a short time after the homicide, and was a direct accusation to her, charging her with the commission of the offense.

Jackson was permitted to testify that appellant, on the night of and subsequent to the homicide, stated she cut deceased with a whitehandled knife. She was talking to witness and the crowd present. George Wilson was also present, and witness heard her talking to George, heard George talking to her, and heard him say, "Whatever you do, don't tell them I gave you the knife." This occurred just after and a short distance from the scene of the killing. Motion to exclude this testimony was made, because of its irrelevancy, immateriality and incompetency; and further "because it was the act and declaration of a third party of the commission of alleged homicide and was prejudicial to defendant and not such as to call for any answer from defendant." Part of this testimony introduced was the statement of the defendant herself, admitting that she cut deceased with a whitehandled knife; and the remaining portion of it was part of the conversation between George Wilson and herself, in which George told her, whatever she did, not to mention the fact that he gave her the knife. This is not the act or declaration of a third party in the absence of the defendant, but it is a part of the conversation between defendant and George Wilson.

Bill number 3 was reserved to the testimony of Owens, the constable who arrested appellant for killing Della Wright. After being warned she made a statement to the effect that she had killed Della Wright with a knife, and thought Della Wright was going to kill her. Owens testified this was her first statement. On the following morning, about 9 or 10 o'clock, he again warned her, and sought to elicit some facts from her, but she declined to answer. Later on, during the day, and about 4 o'clock in the evening he started with appellant to McKinney, and sought again to get her to tell him about the killing and who was connected with it besides herself, and told her he thought others were in it, and wanted her to tell. But at that time he did not warn her. However, she made the statement: "George Wilson gave me the knife and told me to kill her. He got me in the trouble and if it had not been for him I would not have been in it." Objection was urged to this because it was not voluntary, and because appellant was not properly warned, and the evidence did not show that she had the previous warning in mind at the time. We believe the testimony was properly admitted. She had been repeatedly warned, and under one of the warnings she had made a confession, and it was the same officer who gave all the warning to whom she made the second statement. While there were six or seven hours intervening, still these facts are so connected to the inquiries and warn-

ings that we are of opinion she had the warning in mind at the time of
the second statement.

The charge is a full and fair one, presenting every phase of the law,
as we understand the facts, that could have been beneficial to defendant.
Therefore, the court did not err in refusing the special instructions re-
quested. The first special instruction was asked upon the theory that
deceased had used insulting language about a female relative of de-
fendant. The language imputed to her was made to defendant and one
or two of her sisters, who were present, in which deceased called them
bitches or damn bitches. This did not suggest the theory of insulting
conduct toward a female relative.

The second special instruction was requested on the theory that appel-
lant was defending against an attack made by deceased upon the sisters
of appellant and was about to inflict upon them serious bodily injury,
and for that purpose she interfered and used a knife. We do not believe
this charge was called for by the evidence. This difficulty occurred
between appellant and deceased. While two of her sisters were with
her at the scene of the tragedy, yet the difficulty occurred between
appellant and deceased, in which appellant claimed that deceased was
using a poker, and had made an attack on her with the poker at the time
she stabbed her with the knife.

The other charges pertain to the question of self-defense. The court's
charge presents every phase of the law applicable to her theory of
self-defense, both as to an attack, or threatened attack, apparent danger
and in defense of an attack made in pursuance of previous threats.

It is contended that the judgment should be reversed on account of
the misconduct of the jury. It is stated, under oath, in connection with
the motion for new trial, that one of the jurors remarked, "Wonder why
she had not testified," and some of them replied that the constable had
testified that she admitted the killing. Some of the jury remarked,
"Wonder why she (referring to defendant) did not testify?" It is shown
upon an investigation of this matter, by affidavits, that the remark
referred to was made after the jury had agreed upon the verdict and the
same had been written out and signed by the foreman; and while the
jury was waiting for the sheriff to unlock the door and take them into
the courtroom for the purpose of returning their verdict into open court.
Most of the jurors state in their affidavits that they did not hear the
remark; and that the jurors agreed defendant was guilty immediately
upon going into the jury room, before there was any discussion in refer-
ence to the case. It is further stated in one of the affidavits, that one
of the jurors said, he knew that defendant went farther back than the
witness stated, but said juror stated the defendant's witnesses varied and
differed as to the distance, and that they only discussed the evidence of
the witnesses. This was the statement of the juror Wright. Reese and
Chapman filed an affidavit in which Reese says, he saw the blood where
deceased fell and refrained from saying anything about where it was,
or the distance it was from the gate, but discussed the evidence as

adduced on the stand only, and was influenced alone by that evidence. Both Chapman and Reese state that before any discussion was had by the jury they took a vote and all of the jurors voted to find appellant guilty; that ten of the jurors were for murder in the second degree, one for murder in the first degree, and only one for manslaughter. Reese further states that he did not know defendant and deceased, and that he did not say in the jury room that he knew them and that one was as mean as the other. Under this statement of the matter, it occurs to us that the jury did not receive evidence other than that adduced upon the trial of such character as would require a reversal. Reese did state, it seems from his affidavit, that he saw the place where the blood was, but this seems to have been all the statement he made, which was after the agreement of the jury that appellant was guilty. While it may be conceded that this statement of Reese, that he saw where the blood was, was before the jury, we do not see how this could have affected the verdict. It is too insignificant and unimportant in its character to require a reversal.

It is contended that the evidence is not sufficient to support the conviction. We are of opinion that it is. Appellant and a crowd of her friends, mainly kin-folks, were going down the street firing roman candles. Deceased came out of her house and requested them not to fire the candles at her house, for fear of striking some of the children. This brought about an acrimonious war of words. Appellant and her crowd went off some distance and she borrowed a knife from George Wilson, returned, and the difficulty came up. It is also in evidence that deceased challenged her to come back, stating she would fill her full of holes; that this may have induced appellant to borrow the knife and return. Deceased went out about her gate, to which place appellant returned, and the difficulty occurred. Deceased was killed by having her throat cut. Appellant claims that when she returned she met her adversary, who was armed with a poker and struck at her, that she defended against this attack. This is in substance the case. It is seriously questionable whether self-defense was in the case. If appellant returned with the knife for the purpose of killing deceased, and engaged in a difficulty believing her to be armed, she went into a contest willingly which resulted in death. If she accepted the challenge, which is claimed was offered by deceased inviting her to return, with the threat to fill her full of holes, and engaged in the difficulty, that challenge and its acceptance resulted in mortal combat, and she could not claim self-defense from that standpoint. The evidence is fully sufficient to sustain the verdict of the jury. The judgment is affirmed.

*Affirmed.*