JOHN KNIGHT v. THE STATE.

No. 1187. Decided January 17, 1912.

Rehearing denied February 28, 1912.

**1.—Seduction—Evidence—Engagement Ring.**

Upon trial of seduction, where the State had proved that defendant had bought a ring at a certain store and given it to prosecutrix, there was no error to show that an employe of said store had delivered a certain package to prosecutrix resembling a box in which rings are ordinarily kept.

**2.—Same—Evidence—Telephone—Voice.**

Upon trial of seduction, there was no error in permitting prosecutrix' mother to testify that she recognized defendant's voice over the telephone when he asked to make an engagment to have a conversation with prosecutrix at a certain place. which afterwards occurred.

**3.—Same—Evidence—Defendant's Acts and Conduct.**

Upon trial of seduction, where defendant made an engagement to have a conversation with the prosecutrix, a day or two after he was charged before a justice of the peace with seducing her, there was no error in admitting testimony that the aunt of prosecutrix accompanied her and refused to retire to give defendant an opportunity to converse with prosecutrix privately, and in the presence of defendant and another, stated there was no necessity of any talk and that all that was needed was a marriage license and a preacher, to which defendant made no reply. Davidson, Presiding Judge, dissenting.

**4.—Same—Evidence—Declarations of Defendant.**

Where, upon trial of seduction, it was shown that defendant and prosecutrix, at the time of the alleged offense, moved in good society, there was no error in admitting in evidence the declarations of defendant that he was not monkeying with coons, but that he was going into the best parlors in town where he was getting better stuff than that; and a further declaration that a party with whom he was conversing would be surprised if he knew from whom he was obtaining intercourse in a certain town in which prosecutrix lived. This was a circumstance of corroboration and the jury was entitled to every fact however slight which might aid them in passing on the guilt or innocence of the accused. Davidson, Presiding Judge, dissenting.

**5.—Same—Evidence—Pregnancy.**

While the statement of the prosecutrix to her uncle that she was pregnant was hearsay, yet, he being a physician, had found on examination that the same was true, there was no error; besides, the same was not controverted. Following Williams v. State, 24 Texas Crim. App., 17, and other cases.

**6.—Same—Rule Stated—Evidence—Practice.**

When objection is made to testimony, a part of which only is admissible, then in such an event it is not error to overrule the objection thereto. Following Tinsley v. State, 52 Texas Crim. Rep., 91, and other cases.

**7.—Same—Evidence—General Reputation for Chastity of Prosecutrix.**

Upon trial of seduction, there was no error in admitting in evidence that the State's witnesses were acquainted with the general reputation of the prosecutrix in the communities where she had lived, for chastity and virtue, and that her reputation in those respects was good, and that she moved in the best society; and this was admissible as original testimony and before the prosecuting witness was placed upon the stand and before defendant had offered any testimony; besides, such testimony was admissible in rebuttal and the fact that it was admitted prematurely was not reversible error. Davidson, Presiding Judge, dissenting.

### 8.—Same—Evidence—Chastity—Rule Stated.

While under the Penal Code there is no provision that if the alleged seduced female had by consent under any circumstances had carnal intercourse with a man, she would not be the subject of seduction, yet the decisions of this court incline to that rule in Texas, and the reputation of the injured female for virtue and chastity can be introduced as original testimony. Following Mrous v. State, 31 Texas Crim. Rep., 597, and other cases. Davidson, Presiding Judge, dissenting.

### 9.—Same—Rule Stated—Chastity—Original Testimony.

In prosecutions of seduction, the virtue and chastity of a woman alleged to have been seduced is an issue in every case from its inception to the end, and lack of virtue and chastity is a complete defense to the case, even though the defendant has been guilty of all the acts and conduct that would otherwise render him guilty of the offense, and the State can, therefore, introduce evidence of the virtue and chastity of the woman as original testimony. Following Nash v. State, 61 Texas Crim. Rep., 259. Davidson, Presiding Judge, dissenting.

### 10.—Same—Evidence—Engagement to Marry.

Upon trial of seduction, there was no error in permitting the prosecutrix to testify that she was engaged to the defendant at the time of the alleged offense, and that he was responsible for her pregnancy.

### 11.—Same—Evidence—Bill of Exceptions.

Where the bill of exceptions does not set out any of the testimony objected to, but refers to other parts of the record, the same can not be considered on appeal; besides, the same was admissible.

### 12.—Same—Argument of Counsel—Defendant's Failure to Testify.

Upon trial of seduction, there was no error in State's counsel argument that defendant had offered no evidence except some letters, and the testimony of his mother; this was no allusion to defendant's failure to testify; besides, no special charge was requested. Following Vann v. State, 48 Texas Crim. Rep., 15, and other cases.

### 13.—Same—Misconduct of Jury—Allusion to Defendant's Failure to Testify—Practice on Appeal—Affidavits.

Where it appeared on appeal that the bills of exception to the misconduct of the jury were not filed during term time, the same could not be considered and the question that the jury, while in their retirement, discussed the failure of the defendant to testify, and that the jury were introduced on the motion for new trial and so testified, can not be reviewed, as the bill of exceptions was filed after term time; besides, there were no affidavits attached to the motion.

### 14.—Same—Charge of Court—Date of Offense—Surprise.

Where, upon trial of seduction, the indictment alleged that the offense occurred on or about the 20th day of May, 1910, and the evidence showed that the defendant had carnal intercourse with prosecutrix about that time, but that he had also had intercourse for the first time with her in January, 1909, there was no error in the court's charge that time was not the essence of the offense if the offense was not barred, and that they could not convict the defendant by reason of the intercourse with her on said May 20th, but only by reason of the first act of intercourse in January, 1909; no surprise at date of offense being claimed. Davidson, Presiding Judge, dissenting.

### 15.—Same—Date of Offense—Limitation—Statutes Construed.

The time when the offense was committed must be proved, but the exact date in the indictment need not be proven, so that it is anterior to the presentment of the indictment and was not barred by limitation. Article 439, Code Criminal Procedure, subdivision 6. Following Archie v. State, 28 Texas Crim. App., 198, and other cases.

**16.—Same—Charge of Court—Contradictory Charge—Date of Offense.**

Where, upon trial of seduction, the charge of the court authorized a conviction for an offense committed within three years prior to the filing of the indictment, and that defendant could not be convicted for any act subsequent to the first act of carnal intercourse, if there was any, the same was not contradictory or confusing when considered as a whole. Davidson, Presiding Judge, dissenting.

**17.—Same—Charge of Court—Requested Charges.**

Where the requested charges were fully covered by the court's main charge, there was no error in refusing them.

**18.—Same—Requested Charges.**

Where the alleged requested charge was not mentioned in the motion for a new trial, the same could not be considered.

**19.—Same—Election by State.**

Where the charge of the court instructed the jury that a conviction could be had alone on the first act of intercourse, if any, this was a sufficient election upon which act of intercourse the State would rely; besides, there was no bill of exceptions and there was no error.

**20.—Same—Charge of Court—Accomplice—Bill of Exceptions.**

Where, upon appeal from a conviction of seduction, the motion for new trial did not point out any errors in the court's charge on accomplice testimony and there was no bill of exceptions, the same could not be considered.

**21.—Same—Charge of Court—Definition of Offense.**

Where, upon trial of seduction, the court's charge sufficiently defined the offense when considered as a whole and besides, gave defendant's special instructions on this phase of the case, there was no reversible error. Davidson, Presiding Judge, dissenting.

**22.—Same—Rule Stated—Practice on Appeal.**

Where no objections were urged or presented to the charge of the court at the time the same was delivered to the jury, and none was stated in the motion for new trial, the same can not be reviewed on appeal.

**23.—Same—Sufficiency of the Evidence.**

Where, upon trial of seduction, the evidence sustained a conviction, there was no error. See facts in opinion held sufficient to sustain a conviction for seduction.

**24.—Same—Misconduct of Jury—Practice on Appeal.**

Where the claim that the jury discussed the defendant's failure to testify is not supported by affidavits, but denied by the State, and there is no evidence in the record to support the allegation in defendant's motion, and the bill of exceptions does not include the testimony of a single witness, the same can not be reviewed; besides, the bill of exception was filed after term time.

**25.—Same—Bill of Exceptions—Practice on Appeal—Charge of Court.**

Where, upon appeal, there was no error pointed out. to the charge of the court on accomplice testimony in defendant's bill of exceptions or in any other portions of the record, but appellant assigns error on this ground for the first time in his brief, the same can not be considered under article 723, Code Criminal Procedure. Davidson, Presiding Judge, dissenting.

**26.—Same—Defendant's Acts and Conduct.**

Where defendant was under charge of seducing the prosecutrix and bound over to the grand jury, there was no error in admitting in evidence the declarations of a witness then made in his presence, upon the occasion defendant requested an interview with prosecutrix, that all that was needed was a marriage license and a preacher, to which defendant made no reply. Following

Browning v. State, 26 Texas Crim. App., 444, and other cases. Davidson, Presiding Judge, dissenting.

### 27.—Same—Evidence—Declarations of Defendant.

Where, upon trial of seduction, the evidence showed that defendant had carnal intercourse with prosecutrix in her father's parlor; that she was the only girl to whom he paid attention and that he subsequently declared that he had knocked her up, there was no error in admitting his declarations that he was not monkeying with coons, but was going into the best parlors and that he was getting better stuff, etc.

### 28.—Same—Bill of Exceptions—Qualification—Practice on Appeal.

Where it appeared on appeal that appellant's bill of exceptions to the court's charge pointed out no error, and the court's qualifications thereto was that when the court read the charge the counsel of the defendant excepted generally and gave no reasons, he is bound by the qualification; especially, under article 723, Code Criminal Procedure; besides, no error was pointed out in the motion for new trial. Davidson, Presiding Judge, dissenting.

### 29.—Same—Charge of Court—Promise of Marriage.

Where, upon trial of seduction, there was no testimony which raised the issue of lust and that prosecutrix did not solely rely on defendant's promise of marriage, there was no error in the court's refusal of defendant's special instruction that if prosecutrix was moved to the alleged sexual intercourse by lust and not solely on the unconditioned promise of marriage by defendant, to find him not guilty.

### 30.—Same—Rule Stated—Discretion of Court.

The rule is that when the evidence tends sufficiently to the establishment of the offense or mitigation of the offense charged, as to reasonably require a charge applicable, it is a question of sound judgment to be exercised by the trial judge in the first instance and afterwards by the Appellate Court; and if it is deemed very weak, trivial, light, and its application remote, the court is not required to give a charge thereon.

### 31.—Same—Function of Appellate Court.

See opinion, giving assurance to appellant, that all appeals will be given careful consideration under the rules of law as laid down by the decisions of the courts of last resort and the statutes.

Appeal from the District Court of San Augustine. Tried below before the Hon. W. B. Powell.

Appeal from a conviction of seduction; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*King & King* and *Wm. McDonald,* for appellant.—Opinion of witness expressed in presence of defendant to which he makes no reply: Sauls v. State, 30 Texas Crim. App., 496; Bennet v. State, 39 Texas Crim. Rep., 639; O'Quinn v. State, 55 id., 18.

Upon question of declarations of defendant: Garrett v. State, 52 Texas Crim. Rep., 255; Fuller v. State, 54 id., 454.

On question of corroboration of prosecutrix: Bernard v. State, 40 Texas Crim. Rep., 67; Smith v. State, 58 id., 106; Harvey v. State, 53 S. W. Rep., 102.

On question of general reputation of chastity of prosecutrix: Con-

way v. State, 33 Texas Crim. Rep., 327; Green v. State, 49 id., 239; Ezell v. State, 65 S. W. Rep., 370; 35 Cyc., 1314-16.

On question of allusion to defendant's failure to testify: Wilson v. State, 39 Texas Crim. Rep., 370; O'Quinn v. State, id., 260; Jordan v. State, 16 S. W. Rep., 543; Wilkins v. State, 26 id., 409; Dorrs v. State, 40 id., 313; Thorpe v. State, 50 id., 383; Beard v. State, 55 id., 906; Adams v. State, 64 id., 1056.

Upon question of court's charge on accomplice testimony: Garlas v. State, 48 Texas Crim. Rep., 451; Campbell v. State, 57 id., 301; Lemons v. State, 58 id., 269.

On question of court's charge to acquit defendant if prosecutrix did not wholly rely on promise of marriage: Barnes v. State, 37 Texas Crim. Rep., 329; Nolan v. State, 48 id., 438; Fine v. State, 45 id., 290; Simmons v. State, 54 id., 624; Muhlhouser v. State, 56 id., 288; Spenrath v. State, 48 S. W. Rep., 192.

Upon question of insufficiency of evidence: Spenrath v. State, 48 S. W. Rep., 1931; Snodgrass v. State, 31 id., 266; Sledge v. State, 62 id., 317; Reaves v. State, 10 id., 841; Fine v. State, 45 Texas Crim. Rep., 290; Garlas v. State, 48 id., 449.

*C. E. Lane,* Assistant Attorney-General, and *D. M. Short & Sons,* for the State.—See cases in opinion.

HARPER, JUDGE.—In this case appellant was prosecuted, charged with seduction, was convicted and his punishment assessed at three years confinement in the penitentiary.

The record discloses that the alleged seduced female and appellant are cousins, and prior to this occurrence both were of good standing. The prosecuting witness, Miss Annie Slaughter, testified that she was twenty-one years old, and that defendant was twenty-three years of age; that they were third cousins. That she had known defendant about six years; that appellant first began to come to see her or court her in the fall of the first year she met him. She was living with her parents in the Polk neighborhood at that time, and he continued to come to see her for three and a half years. That she was pregnant, and John Knight was the cause of the pregnancy; that she had never had intercourse with anyone else except John Knight. That she had testified at the examining trial of defendant, and shortly thereafter, while at home, she was told by her mother to go to the telephone. That she had a talk with John Knight over the telephone; that she recognized his voice, and that he asked her if she would come to the residence of Mr. Crockett, as he wanted to have a conversation with her. That she asked her mother, and agreed to meet him at the residence of Mr. Crockett. That her aunt, Mrs. Mattie Goldsberry, went with her. That Mr. Crockett met them at the door, and when they went in defendant was there. That defend-

ant and Mr. Crockett refused to talk in the presence of her aunt, and wanted her aunt to retire. This her aunt refused to do, and she had no conversation with the defendant at this time. That during the years 1907, 1908 and 1909 she had corresponded with defendant and identified a number of letters which were introduced in evidence. That she first became engaged to marry appellant about Christmas in 1907, and that the engagement continued until in April, 1909; that the engagement was renewed in May, 1910. That she was at the residence of Mr. Jim Buley in December, 1907, when she and defendant first became engaged to be married, and that defendant had been coming to see her for about a year and a half at that time, and continued his visits and correspondence until in January, 1909, when the first act of intercourse with defendant occurred. That she had never had intercourse with anyone else. That in the fall of 1908, when defendant came back from school, he said he was going into business the next year, and would be ready for her; that was about a month before the first act of intercourse. That the first time he ever suggested having sexual intercourse with her was at Rebecca Switch in 1908. He did not come right out and say what he wanted, but she knew by his actions and his ways, and she told him she only had her character. That he knew her father was not a wealthy man, and that she had to shield her character, and he said not to be uneasy about her character, he would never mar it, and that as they were going to get married what difference did it make, but she refused at that time; but that in January, 1909, while he was visiting her at her father's home and while she was sitting in his lap, he had carnal intercourse with her the first time. She testified to other acts of intercourse subsequent to this time in 1909, one in about a week subsequent to this time, and one in April. That in April, 1909, a disagreement came up. That she had intercourse with him that day, when she told him that they should either marry or such proceedings should stop. "He said it did not make any difference, as we were going to marry anyway, and he didn't see why I shouldn't want to grant his wishes, but he said I can quit coming to see you if you want me to. I told him I didn't mind his coming, but such proceedings as that I wouldn't go through with any more. Such proceedings as I have mentioned give me pain and very much humiliation." That was the afternoon he asked her to let him see the ring, and she gave it to him. This was the ring she termed the engagement ring. She says she did not ask him what he wanted with it, and he kept it, and she supposed he considered the engagement broken off after he got the ring, as he did not come to see her any more until in May, 1910. She says:

"He came to go walking. He said that John Garrett and Eula Smith would meet us at the College Campus. He didn't say where we were going—he said we would decide when we all got together where we would go. He came to my house and we went up to the

College. My mother was at home at the time he came. No one left home at. that time with me but the defendant, John Knight, and we went south towards the Cóllege Campus and we joined Eula Smith and John Garrett there. That was in May, 1910. John Knight and John Garrett and Eula Smith and myself went over to Matthew Cartwright's pasture. We. went by Mr. John Brooks' place, going a trail—we went through a large gate into the pasture. John Knight and myself went in first—after we went through the gate into the pasture we did not go together—John Garrett and Eula Smith went to the right and John Knight and myself went down further to the left. When John Knight and myself came out of the pasture we met Eula Smith and John Garrett at the gate. I suppose we were down in the pasture about two hours. That was a large pasture and full of shrubbery. We went to a shady place and sat down and talked of the general happenings of the town, and then I asked him for the first time why he had done me like he had the year before. He said, 'You know I love you better than any other girl, but you seem so strange, I couldn't come back to see you.' I told him that if he cared as much for me as he said he did he wouldn't stay away on that account. He said, 'Well, I have been into a little trouble, but I still love you, and when I get out of this trouble I am going to marry you,' and then proceeded to put his arm around me, and I withdrew and told him not to do that, that it didn't make any difference if I still loved him. He then placed me on the ground and had intercourse with me.

"After I had sexual intercourse with the defendant, John Knight, in Mr. Cartwright's pasture in May, 1910, I had sexual intercourse with him at my home in the parlor and on the front porch. The date of the last sexual intercourse with the defendant was the 2d week of July, 1910. I yielded to the defendant and had those sexual intercourses with the defendant only because he promised to marry me. He promised to marry me again in.May, 1910, and I was afraid if I did not submit to his wishes he would not marry me. I had faith in his promises or I would never have submitted myself to no such conduct with him."

On cross-examination she stated that if she had testified that the first time they became engaged was in December, 1907, that she meant 1906, as that was the time it was, and it was renewed in Mr. Buley's house. That they had become engaged at her uncle's home in December, 1906, when he told her how much he loved her, and asked her if she would wait for him, and she had told him that she would. That defendant had got mad in the summer, but the engagement was not broken, and when he came to see her Christmas it was. renewed. "He told me at this time he was not able to take me then, but when he got financially able to he would marry me. This was in December, 1907. The understanding was that we would be married when he got able to take care of me, and in December, 1908,

he had said he would be ready for me next year—that he was going in business." She was asked in regard to her testimony at the examining trial, and defendant introduced a part of her testimony, it being as follows:

"He had been going to see me about two years before we became engaged. I do not remember how he approached the subject of marrying. He never did come plain out and engage to marry me. At the time he first had intercourse with me, and at all of the other times that he had intercourse with me up until last May, there was nothing said about marrying. The first act of intercourse was in January, 1909."

1. The defendant did not testify in the case. The first bill of exceptions relates to the admissibility of the testimony of the witness Barto McClary, who testified that in the spring of 1907, he delivered a package to the prosecuting witness, which was about an inch square and resembled a box in which rings are ordinarily kept, to which testimony defendant objected. The State had proved that appellant had bought a ring at the store at which this witness was working about the time, and the prosecuting witness, Miss Slaughter, testified that this witness brought her the ring, which was the engagement ring, in May, 1907, and she kept it until in April, 1909, when defendant had in person requested its return, and took it. Under all these circumstances we think this testimony admissible.

2. In the second bill of exceptions it is stated that Mrs. Kate Slaughter, mother of prosecutrix, had testified that on Thursday after the examining trial of appellant on this charge that someone, and she testified it was appellant, called her up and asked to speak to the prosecuting witness, to which appellant objected, stating various reasons. This witness testified that she recognized appellant's voice, and had often talked with him over the telephone. This was followed up by the testimony of the prosecuting witness that her mother instructed her to go to the telephone, and when she went to the telephone, she recognized appellant's voice, and appellant made an engagement to have a conversation with her at the residence of Mr. Crockett. That in accordance with this engagement she went to Mr. Crockett's and appellant was there. There was no error in admitting the testimony, for in addition to the witness testifying she knew and recognized his voice, it is followed by evidence that renders it clear that it was appellant talking.

3. In the third bill appellant objects to Mrs. Mattie Goldsberry testifying as to what was said when she and her niece (the prosecuting witness) went to the residence of Mr. Crockett, and especially that part wherein she stated she objected to her niece having a conversation with defendant alone in the presence of Mr. Crockett, when she was requested to retire, and further said she did not think they had any talk coming; that all they needed was a marriage license and a preacher. The witness' entire testimony is as follows:

"I know J. A. Slaughter; he is my half-brother. I know Miss Annie Slaughter; she is a daughter of J. A. Slaughter, my own niece. I know John Knight. I have known him since he was a child. I know Mrs. Kate Slaughter; she is my half-brother's wife. I remember about the examining trial wherein John Knight was charged with having seduced Miss Annie Slaughter here in town. Some time after the examining trial, along about the first of December, I went with Miss Annie Slaughter to Mr. Geo. Crockett's. We went from my half-brother's house, J. A. Slaughter's house, to Geo. Crockett's. There was no one else accompanied Miss Annie and myself to Mr. Crockett's except the driver with the surrey. When we reached Mr. Crockett's we found the defendant, John Knight, there at Mr. Crockett's.

"When I went in with my half-niece, Mr. Crockett carried me into the room where John Knight was sitting, and I made some remarks about the weather and then Mr. Crockett said to me that John Knight had requested that Annie Slaughter come there that he might talk with her. That occurred in John Knight's presence. Mr. Crockett said that John Knight wanted to talk to Annie alone in his presence. He wanted to talk to Annie Slaughter in Mr. Crockett's presence and me leave the room, and I said that I did not think there was any subject to be discussed between John Knight and Annie Slaughter except the subject of marrying and a preacher. That they had talked enough heretofore, and so when I said that Mr. Crockett said he thought so, too. He said he did not know anything about it. That he was there to try to help matters and I refused then to leave the room for John Knight to talk with Annie Slaughter in Mr. Crockett's presence and no other one present. I told Mr. Crockett I thought that they had the advantage. John Knight had asked her presence over there, and Annie's father was not at home and I came with her, and I told Mr. Crockett I thought that he had the advantage of the girl, that Mr. Crockett was this young man's kinsman, also his bondsman, and that I thought it was taking undue advantage of the girl for her——

"Well, I thought they had the advantage of the girl. I told Mr. Crockett that he was related to the boy and he was his bondsman and that they did not ask to talk alone, that they asked for Mr. Crockett to be present there and not to allow me to be there, and so I said I would not do it, that I thought they had the advantage of the girl. The boy asked me if I did not trust him—John Knight asked me that question—and also asked me if I didn't believe—— let me go back a little. I said I told Mr. Crockett that I could not say that, if he did not want to marry the girl, I could not see what his object was unless it was to talk in Mr. Crockett's presence and try to get this girl in her cowed condition to use something against herself and might force Geo. Crockett as a witness——

"And so Mr. Crockett said that he did not like the responsibility

of such a position, but said that he was trying to amend matters, and this young man asked me if I would not believe Mr. Geo. Crockett. If I did not believe that Mr. Crockett would tell the truth, and I said I did not think it was a question of Mr. Geo. Crockett's integrity at all; that I had as much confidence in him as any, but I thought that it looked like they were using Mr. Crockett as a tool, and so we talked and we talked on this same line, and I finally asked Mr. Foster's advice. Mr. Foster is a lawyer, and I said if I was wrong I would like to know it. They did not talk. He would not talk because he would not talk in my presence. I left there and took the girl with me. The defendant was present during the whole time."

This occasion was the result of appellant's effort to arrange a private interview with prosecutrix, and the aunt had the right to state to him the objections to such interview and the fact that he made no reply indicated that he was unable to combat them or to deny them. When any statement is made in the presence of one accused of crime, which calls for a reply, his silence imports his inability to truthfully deny it. The aunt objected to any conversation, but said what was needed was a marriage license and a preacher. The appellant had arranged the meeting and asked for a private talk between himself and his alleged victim; the guardian angel of the latter say nay, no talk, but action in the form of a license and a preacher; the appellant answers nothing. Surely, under such circumstances it was incumbent upon him to deny that the office of a marriage license and a preacher were demanded by the environments of the occasion. He stood mute in the face of the implied accusation, and surely this action was admissible as a fact to go to the jury. No one save appellant knew his purpose in seeking a private interview with the chief witness against him, and when the aunt tells him a license to marry and a preacher were the only things appropriate under the existing conditions, wherein stood face to face, in the presence of assembled witnesses, he who stood charged with the offense of seduction, and she, whom it is alleged he had seduced, and he remains mute under those circumstances, the fact is admissible against him because had he been innocent, the courage thereof would have impelled him to have denied that a license and a preacher had any place in the proceedings. His silence in the face of such language was an acquiescence in the truth thereof. Moore v. State, 15 Texas Crim. App., 1; Wharton's Crim. Ev., sec. 680; Greenl. Ev., sec. 197; Browning v. State, 26 Texas Crim. App., 432; Clement v. State, 22 Texas Crim. App., 23; Bennett v. State, 39 Texas Crim. Rep., 639, 48 S. W. Rep., 61; Connor v. State, 17 Texas Crim. App., 1.

4. In bill of exceptions No. 4 it is claimed that the court erred in admitting the testimony of Eddie Alvis, who testified that he heard a conversation between defendant and one Jeanes, in which

Jeanes stated that he had been having intercourse with "coons," to which defendant replied, "that he was not monkeying with coons, that he was going into the best parlors in the town, where he was getting better stuff than that," and in bill of exceptions No. 5 it is claimed that the court erred in permitting the witness Rea Thompson to testify that appellant had stated to him, "that he (witness) would be surprised if he knew from whom he was obtaining intercourse in the town of San Augustine." Defendant objected to this testimony on various grounds as set forth in the bills. Under the rules of law as laid down by this court, the prosecuting witness must be corroborated in the fact that defendant had had sexual intercourse with her, and as said by Judge Hurt, the seducer does not ply his nefarious designs in the presence of the multitude, and in the midst of witnesses who can testify to seeing an actual act of intercourse between the parties, hence the necessity of corroborating the witness by circumstantial evidence, and in cases where circumstances are relied on to corroborate the testimony of a witness, greater latitude is allowed in making the proof than when direct testimony is obtainable. (Ballew v. State, 36 Texas, 98; Noftsinger v. State, 7 Texas Crim. App., 301; Preston v. State, 8 Texas Crim. App., 30; Early v. State, 9 Texas Crim. App., 476; Simms v. State, 10 Texas Crim. App., 131; Washington v. State, 8 Texas Crim. App., 377; Means v. State, 10 Texas Crim. App., 16; Green v. State, 12 Texas Crim. App., 51; Pogue v. State, 12 Texas Crim. App., 283; Langford v. State, 17 Texas Crim. App., 445; Barnes v. State, 41 Texas, 342; Cooper v. State, 19 Texas, 450.) In these cases it being held that in a case depending upon circumstantial evidence, the mind seeks to explore every possible source from which light, however feeble, may be derived, and in such case it is peculiarly proper that the jury should have before them every fact and circumstance, however slight, which might aid them in coming to a satisfactory conclusion as to the guilt or innocence of the accused. And in the case of Sims v. State, 10 Texas Crim. App., 131, this court held that in cases of circumstantial evidence no definite line of demarkation can be drawn with regard to facts proximate and remote. The test is: Do they tend to throw light upon the transaction? And the testimony of the witness Rea Thompson is rendered peculiarly admissible in this case, for while he says that the above conversation took place early in the year 1910, he states that subsequently during the same year this defendant stated to him "that he (defendant) had got Miss Annie Slaughter, the prosecuting witness, knocked up."

5. The next bill refers to the testimony of Dr. Davis, which is to the effect that prosecutrix was his niece and had told him she was pregnant, which statement, he being a physician, had found from an examination to be true. The ground being that it was not corroborative of the testimony of the prosecuting witness. The rule is when an objection is made to testimony, a part of which only is

admissible, then in such event, it is not error to overrule the objection. The statement of the prosecuting witness made to her kinsman was hearsay, but the fact that he had received certain information from her by reason of which he made an examination of her and found she was pregnant was evidence tending to corroborate her testimony that she had had sexual intercourse with someone, while it would take other testimony perhaps to connect the appellant with the act of intercourse which caused the pregnancy. But all the circumstances can not be obtained from any one witness. The fact sought to be proven was the pregnancy of the prosecutrix, and this fact, established by the physical examination, was admissible, and was not really controverted, and so that admission of the statement of the prosecuting witness to the doctor, even if inadmissible, was an uncontroverted fact. Williams v. State, 24 Texas Crim. App., 17; Tubb v. State, 55 Texas Crim. Rep., 606; Windham v. State, 59 Texas Crim. Rep., 366; Heimes v. State, 59 Texas Crim. Rep., 420; Railey v. State, 58 Texas Crim. Rep., 1; Decker v. State, 58 Texas Crim. Rep., 159; Carter v. State, 56 Texas Crim. Rep., 305; Anderson v. State, 56 Texas Crim. Rep., 360; Romero v. State, 56 Texas Crim. Rep., 435; Arnwine v. State, 54 Texas Crim. Rep., 213; Tinsley v. State, 52 Texas Crim. Rep., 91.

In this latter case, in discussing testimony held to be admissible, this court says: "One of the safe rules in ascertaining whether the evidence prejudiced appellant, is the question, did the evidence in any sense tend to strengthen the State's case? If it did not, it would not present reversible error," and in no sense can it be said that the statement of prosecuting witness to the doctor that she was pregnant tend to strengthen the case, when the doctor testifies that he made a physical examination and found that she was pregnant, which fact was admissible in evidence.

6. In bill of exceptions No. 7 defendant complains that the State was permitted to prove by Mrs. H. J. Matthews and a number of other witnesses, that they were acquainted with the general reputation of the prosecuting witness, Miss Annie Slaughter, in the communities where she had lived, for chastity and virtue, and that her reputation in those respects was good, and that she moved in the best society. This testimony was admitted as original testimony, and before the prosecuting witness was placed upon the stand, and before the defendant had offered any testimony. When Miss Slaughter was introduced as a witness, defendant sought to prove by her that no promise of marriage existed when the acts of intercourse took place in 1909, and offered the excerpts from her examining trial testimony heretofore herein copied. Defendant also introduced his mother as a witness, who testified that she had seen a letter written to appellant by Miss Slaughter (which had been destroyed) in which it was stated that she (Miss Slaughter) wanted appellant to advise her what to do as a friend, as she was afraid to tell her folks about

it, and in which letter the witness said prosecuting witness stated appellant was under no obligations to her. The prosecuting witness denied writing any such letter. By the introduction of this testimony, and the cross-examination of the prosecuting witness, the appellant sought to prove to the satisfaction of the jury that the acts of intercourse in 1909 were the result of the mutual lust of each of the parties, and appellant had not seduced the prosecuting witness, thus attempting to show that she was not a chaste and virtuous woman, but one who was controlled by her lustful desires. This would have rendered the testimony of her reputation as a virtuous and chaste woman admissible in rebuttal, and the fact that it was admitted prematurely, would not be reversible error, if at any stage of the trial the testimony became admissible. In the case of Cox v. State, 8 Texas Crim. App., 254, this court holds: "We must look at the real competency of the evidence and not the order of its reception; and when we find that it was fully competent, we will not reverse because of the time or order of its introduction." Moore v. State, 7 Texas Crim. App., 14. But at the request of counsel in this case, we will discuss whether or not, in a case of seduction, the reputation of the injured female for virtue and chastity can be introduced as original testimony. Our Penal Code provides: "If any person by promise to marry shall seduce an unmarried female under the age of twenty-five years, and have carnal knowledge of such female, he shall be punished by imprisonment in the penitentiary not less than two nor more than ten years." In this article of the Code there is no provision that if the alleged seduced female had by consent, under any circumstances, had carnal intercourse with a man, she would not be the subject of seduction, and yet the decisions of this court incline to that rule in Texas. Mrous v. State, 31 Texas Crim. Rep., 597; Simmons v. State, 54 Texas Crim. Rep., 619. This case illustrates the workings of such a rule. If Miss Slaughter is to be believed, by the acts of intercourse in January, 1909, the offense charged was committed. She says in 1909 they carnally knew each other twice more, when, at the last act, in 1909, she informed appellant that such conduct must stop, or that they must get married; that this conduct caused her pain and humiliation, when appellant asked for the engagement ring and told her if she could not comply with his wishes he would cease to visit her, and because she would not continue the illicit intercourse, he did cease to visit her and broke off the engagement. By the record it is not disclosed that the prosecuting witness was guilty of any improper conduct, or had intercourse with any other person, nor is it sought to be proven that she was of loose character, yet the appellant insists and the trial court, under the decisions of this court, instructs the jury that although they may believe that when appellant again began to visit her in May, 1910, that appellant became engaged to marry prosecutrix, and by his conduct in May, 1910, seduced the prosecut-

ing witness, yet he would be guilty of no offense if she had theretofore had carnal intercourse with appellant. While in this contention we do not fully concur, and do not think our decisions go to that extent, and in many jurisdictions it is held that if a woman is seduced and then reforms and leads an upright and moral life, and is again led astray by the machinations and blandishments of a pretended lover, the second constitutes an offense as well as the first, but the trial court, at the request of appellant, held the second act in 1910 constituted no offense, yet if in any case, the second act could constitute an offense, it seems that the facts in this case would present such a case. However, the trial court in thus instructing the jury, at the request of appellant, states that appellant could not be convicted of any offense after the first act of intercourse, and if the fact that a woman is not a woman of virtue and chastity, or that under any given conditions has by consent submitted to the embraces of a man, is a complete defense, then it is an issue in every case, as to whether or not she is a woman of virtue and chastity, or has been guilty of carnal intercourse with any other man. It seems to have also been well established by the decisions of this court that a defendant can prove the character of the prosecuting witness in every case, and whether or not her conduct has been such as to bring it into question. (Kelly v. State, 33 Texas Crim. Rep., 31; Mrous v. State, 31 Texas Crim. Rep., 597; Parks v. State, 35 Texas Crim. Rep., 378; Creighton v. State, 41 Texas Crim. Rep., 101; Davis v. State, 36 Texas Crim. Rep., 548; Nolan v. State, 48 Texas Crim. Rep., 436; Jeter v. State, 52 Texas Crim. Rep., 212; Caviness v. State, 42 Texas Crim. Rep., 420; Carter v. State, 59 Texas Crim. Rep., 73, 127 S. W. Rep., 215.)

It is true, that every woman, in law, is presumed to be chaste and virtuous, but if this proof is necessary in every case of seduction, is the State bound to rely solely on this presumption? If it is an issue of fact, the State can not be forced to rely solely upon this presumption, but it can go further and offer additional proof on this issue. Of course, the best evidence obtainable must be offered in every case, and in a case of seduction where the virtue and chastity of a woman is an issue, is not her general conduct in life, and the general reputation she gains by her life the best evidence on this issue that is obtainable? And if the defendant can offer evidence of this character, by what rule of law would the State be excluded from also introducing it? It is true that general reputation is not generally admissible until some impeaching testimony is offered, but that is because such fact does not become an issue in the case until the impeaching testimony is offered. However, in seduction, the decisions of this court make the virtue and chastity of a woman an issue in every case from its inception, and lack of virtue and chastity a complete defense to the case, even though the defendant has been guilty of all the acts and conduct that would otherwise render him guilty

of the offense. We think it clear that under the decisions of this court, the State can introduce evidence of the virtue and chastity of a woman in the original testimony, as it is an issue that the jury must find in favor of the State, or the defendant be entitled to an acquittal. Mr. Underhill in his work on Evidence, says:

"Sec. 392. Seduction is usually a statutory crime. It is often provided by statute that the female must have been chaste or virtuous, or of chaste character or repute previous to the intercourse with the accused. It is for the court to construe the meaning of these words in a statute. As a matter of law, every woman who has never been married and who is a virgin is chaste. The test is sexual intercourse. Whether the female is a virgin is always a question of fact for the jury. The evidence upon this question need not be direct. Positive evidence of an act of sexual intercourse with a man is of course conclusive evidence of unchastity. Physical unchastity may also be inferred from proof of indecent familiarities with men, or indecent language and conduct and, perhaps, from mere indiscretion and im-proper associations. All the previous acts, conduct and conversations of the woman are received to prove or disprove her chastity, if actual physical unchastity is not proved. And where actual chastity of the female is admitted, the moral and mental chastity of the female may be relevant to enable the jury to determine whether the woman, though physically chaste, was seduced, or whether the intercourse was indulged in by her for the purpose of gratifying her lascivious desires. The facts that the prosecutrix lived with her parents, relatives or guardians, moved in the society of respectable people, and was reputed to be chaste; went to church and to social gatherings, are always relevant to prove her actual chastity. It may always be shown that a witness had never heard her reputation for chastity called in question. The woman may testify to her own chastity, and may be cross-examined as to specific unchaste acts and conversations with men other than the defendant, whose names are given or whose names are unknown."

Mr. Bishop, in his New Criminal Procedure, says: Sec. 1106:

"In seduction, under a statute making it punishable to seduce a female of previously chaste character, the presumption of her chastity will not by the better doctrine sustain the averment of it as against a man for seducing her, because he is also presumed to be innocent, and the one presumption balances the other."

In the Am. & Eng. Ency. of Law, page 240, the rule is thus stated:

"The numerical weight of authority undoubtedly supports the view that in a prosecution for seduction the chastity of the woman is presumed, and hence the burden of proof is upon the defendant to show her unchastity, in case he relies upon that to escape the consequences of his act. But there is also abundant authority for what would seem to be the more logical view; that while it is true that in ordinary cases the presumption is in favor of the chastity of a woman, still

where such chastity is an essential element of a criminal offense, as in the case of seduction, the legal presumption of the innocence of the defendant is sufficient to overcome the presumption of the chastity of the woman, and to require that her chastity, like any other element of the offense, should be proved by the prosecution in the first instance," citing People v. Wallace, 109 Cal., 611; State v. Lockerby, 50 Minn., 363, 36 Am. St. Rep., 656; State v. Wenz, 41 Minn., 196; State v. Horton, 100 N. Car., 443, 6 Am. St. Rep., 613; Harvey v. Territory, 11 Okla., 156; West v. State, 1 Wis., 209; State v. McCaskey, 104 Mo., 644; State v. Eckler, 106 Mo., 585, 27 Am. St. Rep., 372; State v. Sharp, 132 Mo., 165; Zabriskie v. State, 43 N. J. L., 640, 39 Am. Rep., 610; Com. v. Walton, 2 Brews. (Pa.), 487; Oliver v. Com., 101 Pa. St., 215, 47 Am. St. Rep., 704. The better conclusion is that some evidence of the woman's good repute should be brought forward in the first instance. State v. Hill, 91 Mo., 423.

We are cited to page 1314 of Vol. 35 of Cyc., where it is held: "In an action by a female for her seduction, the presumption of law is in favor of her virtue. Evidence of her good character has been held to be inadmissible, unless her character is attacked by defendant." But by turning to this reference it will be seen the work at this time is discussing civil actions for damages, and that subject alone, and that on page 1329 of the same volume, is taken up the question of "Criminal Responsibility for Seduction," and in discussing this feature of the law on page 1344, the rule is thus stated:

"In some States it is held that in the absence of evidence to the contrary it is presumed that the female was of previous chaste character or virtuous at the time of the seduction, and that the burden of proving unchaste character or want of virtue is on the accused; but other courts hold that, while chastity is generally presumed, the innocence of the accused is also presumed, and require the State to show affirmatively that the female was of chaste character."

See also McCullar v. State, 36 Texas Crim. Rep., 213; Walker v. State, 134 S. W. Rep., 516; Sharp v. State, 33 S. W. Rep., 795; Kerr v. State, 104 S. W. Rep., 809; Woodard v. State, 30 S. E. R., 522; Hummer v. State, 104 N. W. R., 722; Wade v. State, 50 Pac. Rep., 841; Night v. State, 119 Am. St. Rep., 58; Norton v. State, 48 Am. St. Rep., 538.

This particular point was recently, in effect, decided by this court adversely to the contention of appellant, in the case of Nash v. State, 61 Texas Crim. Rep., 259, 134 S. W. Rep., 709, but even if it was an original proposition the very nature of the elements of the offense renders this character of evidence admissible to support the allegations of the indictment. Under the authorities an unchaste woman is not the subject of seduction. The State must prove the alleged injured female was chaste, otherwise no offense is proven. To do this, her general reputation for chastity can be established as a fact

from which, with other proven facts, the jury may conclude the woman was chaste; and so the appellant could have met the charge by proof of a similar nature that the woman was not the subject of seduction. It is not a case where the law presumes anything in favor of any allegation in the indictment. The State is making a charge against an individual who is presumed to be innocent until every element of the offense with which he is charged has been established by competent evidence beyond a reasonable doubt. To sustain this charge three things must be established: (1) A promise to marry; (2) seduction; (3) carnal knowledge. Such being true, the evidence must affirmatively fill the measure of the meaning of these three elements, among which is the chastity of the alleged injured woman. And in order to prove the possession of a quality by a person it is universal that the general reputation relative to that quality is the only practical way by which this proof can be made. It may be and doubtless is true that this presumption of chastity, aided by her positive testimony, that she had never had carnal intercourse with any other person, would support a finding of the jury that she was chaste and virtuous; but this does not prevent the State from offering additional proof of this fact.

7. The next bill relates to the fact that the prosecuting witness was permitted to testify that she was engaged to appellant, the bill stating that this was but the opinion of the witness. This was admissible, as it is a statement of a fact, and if appellant desired to inquire into further details of what she termed an engagement to marry, he could have elicited it on cross-examination. Defendant also complains that the prosecuting witness was permitted to testify that she was pregnant and appellant was responsible for her pregnancy. This has been decided adversely to appellant. Merrill v. State, 70 S. W. Rep., 979. See also Snodgrass v. State, 36 Texas Crim. Rep., 207; Davis v. State, 36 Texas Crim. Rep., 548.

8. Bill No. 10 is incomplete in that it does not attempt to set out any testimony of the witness, but refers to other parts of the record for the testimony of the witness. But if Miss Slaughter so testified, it would be admissible for the same reasons as stated in that part of this opinion admitting the testimony of Mrs. Mattie Goldsberry, as it relates to the same conversation.

9. In bill No. 11 it is stated that the county attorney in opening his argument stated to the jury that appellant had offered no evidence except some letters and the testimony of his mother. This was a statement of a fact, and we do not think it can be construed or contorted into a reference to defendant's failure to testify, and while the bill states that appellant submitted to the court a special charge instructing the jury not to consider such statement, yet the record before us contains no such special charge, and having failed to present a special charge, this would not present error. (Vann v. State, 48 Texas Crim. Rep., 11; Wright v. State, 37 Texas Crim.

Rep., 146; Arnold v. State, 38 Texas Crim. Rep., 1; Combs v. State, 55 Texas Crim. Rep., 334.)

In the Combs case, last cited, in discussing a similar statement, it is said: "It is only by a strained construction that the above language can be construed as alluding to the failure of the defendant to testify, and in addition to this we have held that any bare allusion by the prosecuting attorney to the failure of a defendant to testify would not operate a reversal of the case."

In this instance we can not hold, as was. said in the Combs case, that the language used was even an indirect reference to the failure of defendant to testify—it was a bare abstract statement of the evidence offered.

10. All the other bills in the record, except bill No. 27, relate to the charge of the court, and the failure to give certain special charges requested. In bill No. 27 it is alleged that the jury while in their retirement discussed the failure of the defendant to testify, and in the bill it is said that a portion of the jury was introduced on the motion for a new trial and so testified. If they did so testify there is no evidence of the fact brought before this court. In the first place, it is shown by the record that court adjourned on January 21, 1910, and this bill was not filed until March 16, about sixty days after the adjournment of court. Bills of this character must be filed during term time, and must contain the evidence offered in support of the motion. In the case of Probest v. State, 60 Texas Crim. Rep., 608, this court held:

"Among other grounds in the motion for new trial relied upon by appellant was the action of the jury in referring to and discussing his failure to testify. This matter was investigated by the court who heard the testimony touching same at length. The testimony in reference to this matter was filed in the court below on May 12, 1910. The term of court at which appellant was convicted adjourned on the 13th day of April, 1910. Since the decision of this court in the case of Black v. State, 41 Texas Crim. Rep., 185, it has been uniformly held that the provisions of our statutes, both civil and criminal, with regard to the preparation and filing of statement of facts for appeal, have reference only and exclusively to a state of facts adduced upon the merits of the case before the jury or the court, as the case may be, and that our statutes have no reference to issues of fact formed on grounds set up in motion for new trial, and that the facts as to such issues, in order to be entitled to consideration on appeal, must have been filed during the term. This rule has since been followed by this court in many cases. Mikel v. State, 43 Texas Crim. Rep., 615; Tarleton v. State, 62 S. W. Rep., 748; Reinhard v. State, 52 Texas Crim. Rep., 59; Jarrett v. State, 55 Texas Crim. Rep., 550; Williams v. State, 56 Texas Crim. Rep., 225. It is clear, therefore, under this rule that this ground of appellant's motion is not, in this state of the record, available in this court."

Even had the bill contained the evidence, being filed after term time, it will be seen this ground of the motion could not be considered by this court, and it might be further stated that there are no affidavits in the record attached to the motion for a new trial as stated in the motion.

11. In six of the special charges requested, and in various grounds of the motion, the question is raised that the indictment having alleged that the offense occurred "on or about the 20th day of May, 1910, that the defendant could not be convicted for an offense committed, if at all, in January, 1909, and the court erred in instructing the jury that time was not the essence of an offense, and while the indictment alleged the offense to have been committed on or about May 20, 1910, yet if the defendant committed the offense as alleged. within three years prior to the filing of the indictment, the allegation as to time would be met." The evidence in this case by the prosecuting witness shows that appellant had carnal intercourse with her about the date alleged in the indictment, but her testimony also shows that appellant had also had intercourse with her in January, 1909, and the court instructed the jury in connection with the paragraph that "time was not the essence of an offense," that "a woman can be seduced but once, and you can not convict the defendant for seduction in this case by reason of intercourse with her on May 20, if any he had, or by reason of any intercourse with her subsequent to the first act of copulation, if any there was, and any such subsequent acts of copulation, if any, after the first act of copulation, if any there was, can be considered by you only along with the other evidence in the case in passing upon the guilt or innocence of the defendant, of the offense charged, by reason of their first act of copulation, if any there was."

If the defendant was surprised by reason of the State introducing proof of an act of intercourse in January, 1909, and relying thereon to secure a conviction, he might have withdrawn his announcement of ready and moved to continue the case. Having failed to do so he can not now be heard to complain. Had appellant claimed surprise, and asked leave of the court to withdraw his announcement, and in the motion shown good reason why he was surprised, and that, by reason of such date being alleged he failed to have present any testimony material to his defense, doubtless the court would have granted him leave to withdraw his announcement. He made no such motion. And in the motion for a new trial, nor now does he state any reason why he was surprised, or that he was denied the privilege of obtaining any evidence necessary to his defense, or if a new trial was granted he could or would obtain any additional testimony tending to prove the falsity of the case as made by the State, or in any way be of aid to him in his defense. In Bryant v. State, 35 Texas Crim. Rep., 394, it is said, when surprised at the testimony a party must move to withdraw his announcement and ask for a postpone-

ment or continuance so that he can meet the testimony. He can not proceed with the trial and urge such matter in his motion for a new trial. And in Mayfield v. State, 44 Texas, 59, it is held the party must make a showing that by a postponement or continuance proof can be obtained material to one's defense. See also Caldwell v. State, 28 Texas Crim. App., 566; Yanez v. State, 20 Texas, 656; Cunningham v. State, 20 Texas Crim. App., 162; Creswell v. State, 14 Texas Crim. App., 1; Childs v. State, 10 Texas Crim. App., 183; Webb v. State, 9 Texas Crim. App., 490; Walker v. State, 7 Texas Crim. App., 245; art. 605 of the Code of Criminal Procedure.

By subdivision 6 of article 439 of the Code of Criminal Procedure it is provided: "The time mentioned (in the indictment) must be some date anterior to the presentment of the indictment, and not so remote that the prosecution of the offense is barred by limitation." This court in Cudd v. State, 28 Texas Crim. Rep., 124, holds: "The time when the offense was committed must be proved, but the exact date in the indictment need not be proven. All that is necessary is that the time of the commission of the offense, be proved and that time proved be a date anterior to the presentment of the indictment, and not so remote as to show that the prosecution for the offense is barred by limitation." See also Arcia v. State, 28 Texas Crim. App., 198; Abrigo v. State, 29 Texas Crim. App., 143; Crass v. State, 30 Texas Crim. App., 480; Shuman v. State, 34 Texas Crim. Rep., 69; Brewer v. State, 5 Texas Crim. App., 248.

The date proven in this case and relied on by the State was within the period of limitation as fixed by the statute. Neither do we think that the charge is contradictory in that it authorized a conviction for an offense committed within three years prior to the filing of the indictment, and also in instructing them that appellant could not be convicted for any act subsequent to the first act of copulation, if any there was. This was a plain statement that the act which they should consider would be the first act, and it must be within the period of limitation, and especially is this true when we consider that in the charge they are also instructed that any subsequent acts, after the first act, can only be considered for certain purposes, and that the special charge given at request of appellant fixes this first act as in January, 1909. Special charges Nos. 1, 2, 3, 4, 5 and 6 all relate to this matter, and the court did not err in not giving them.

12. Neither did the court err in refusing special charges. Nos. 7, 8 and 9, as they are fully covered by the court's main charge in so far as they are applicable to the facts in this case.

13. Special charge No. 10 mentioned in the motion for a new trial is not in the record, and, of course, we can not consider it, as we do not know what it contains.

14. While in the motion for a new trial there is a ground stated that the court erred in overruling appellant's motion to require the

State to elect upon which act of intercourse the State would rely, if such a motion was filed, no bill of exceptions was reserved to the action of the court in overruling it, and the record being in this condition, we can not review same.   However, in his charge the court did elect, and instructed the jury that a conviction could be had on the first act of intercourse alone, if any, and in giving defendant's special charge fixed this date as in January, 1909.   So if the matter was presented to us in a way we could review it, no error would be shown.

15.   In his motion for a new trial appellant complains that the court erred in the following paragraph of his charge:  "You are instructed that the witness Annie Slaughter is an accomplice, and you can not convict the defendant upon her testimony, however true you may believe it to be, unless the same is corroborated by other evidence in the case besides her own.   And the corroboration is not sufficient if it merely shows the commission of the offense, but it must go further and tend to connect the defendant with the commission of the offense."   The only reason assigned is, "For the reasons as shown by defendant's bill of exceptions No. 32."   There is no such bill in the record, and the motion for a new trial pointed out no errors, and there being no bill of exceptions, the allegation is too general to be considered by this court.   Quintana v. State, 29 Texas Crim. App., 401; Holmes v. State, 55 Texas Crim. Rep., 331; Duncan v. State, 55 Texas Crim. Rep., 168; Kubacak v. State, 59 Texas Crim. Rep., 165; Joseph v. State, 59 Texas Crim. Rep., 82.

16.   The term "seduction" is sufficiently defined, and when we take the charge as a whole it is not subject to criticism.   It fairly and fully presents every issue in the case, and especially is this true when the court gave the following special charge at request of appellant:

"You are instructed in this case, in connection with the main charge of the court, that the prosecutrix, Annie Slaughter, is an accomplice to the commission of the offense charged, and before you would be authorized to convict upon her testimony, it is necessary for her to be corroborated by other evidence, independent of her, upon both the alleged promise of marriage and also the alleged act of sexual intercourse with the defendant; and you can not consider the acts, statements or declarations made by said Annie Slaughter subsequent to the first act of sexual intercourse, as corroborative of her testimony.   In this connection you are further instructed that said corroboration is necessary to a legal conviction; even if you believe the testimony of prosecutrix, Annie Slaughter, to be true, still you can not convict unless you further find and believe that there is other testimony, outside of and independent of her own, tending to connect the defendant with the commission of the offense charged, and you are further instructed that the proof that the prosecutrix is now pregnant is not corroboration, such as is required by

law, that the defendant, either promised to marry prosecutrix, or that he had sexual intercourse with her in January, 1909."

However, if the charge was subject to some criticism, appellant has not presented the matter in a way we can review same in the exception to the charge as a whole. No errors are pointed out in the motion for a new trial, and the court states, in qualifying a bill, that when the court read the charge counsel for defendant excepted to the charge generally, but pointed out no error and gave no reason for such exception. No objections being urged or presented at the time the charge was read to the jury, and none being stated in the motion for a new trial, appellant can not after the adjournment of court complain of matters which were not called to the attention of the court by bill of exceptions at the time same was read, or in the motion for a new trial. The trial court at the time he acts on the motion for a new trial is entitled to know all the errors or supposed errors relied on by appellant. Quintana v. State, 29 Texas Crim. App., 401.

17. The only other ground in the motion not herein discussed relates to the sufficiency of the evidence to authorize a conviction. A synopsis of the testimony of the prosecuting witness has heretofore herein been presented. When it is remembered that the act of intercourse for which appellant is convicted was in January, 1909, and the record before us containing forty-three letters from appellant to the prosecuting witness written in 1908, which he addresses her in the most endearing terms, such as: "Annie, dear, I could hold you in my arms and gaze in your sweet face for no limit of time. You must take good care of yourself for the boy that loves you. Oh, dear, it is getting harder for me to tell you good-bye even when calling or anywhere else. I could be happy with you forever. I am sure I would never want to leave you for anything in the world. Sweetheart, if I could just see you now I expect I would love you almost to death." "My happiness all depends on you. I don't know how you have won my whole heart." "No, sweetheart, it can not be true that we are to be separated like this. I earnestly hope for a speedy day when you will be all mine," etc., it is not strange that the jury felt authorized to find that an engagement to marry existed as testified to by the prosecuting witness. And when it is recalled that the witness Rae Thompson testified that appellant told him: "He (appellant) had got Miss Annie Slaughter knocked up," it is not surprising that the jury felt authorized to find that she was corroborated as to the acts of sexual intercourse. The State, in its brief, summarizes as follows:

"To corroborate the testimony of the prosecutrix, the State introduced fifty-six letters written by appellant to her; the witness Tetts testified that appellant had bought two rings; the witness McClary that he had delivered to her a package containing a ring which appellant afterwards claimed; the witnesses Cupit, Nesse and Hicks, sheriff

and deputies, respectively, and Goldsberry, that appellant had fled about the time the prosecution had begun; the witness G. W. Slaughter that he was the father of the prosecutrix, and had informed appellant of the charge against him and had asked him to marry his daughter, and that appellant had agreed to give him an answer by a certain time, but failed to do so; the mother and aunt of prosecutrix that appellant after his arrest sought an interview with her and refused to have it in the presence of the aunt; the witness Alvis that appellant had boasted about his having had intercourse in the parlors of the town of San Augustine; the witness Dr. Davis that prosecutrix was pregnant; the witness Thompson that appellant said he was the author of the condition of the prosecutrix; the witness Phelps that appellant and prosecutrix spent the day near his house on a certain day; the witnesses Slaughter (father and mother) that appellant and prosecutrix are cousins and had frequently had opportunities to have had sexual intercourse the past three years, and was frequently at their home; the witness Downs that appellant and prosecutrix were together on the occasion when she says the engagement to marry occurred and had the opportunity to make the engagement; the witnesses Matthews, Thomas, Boren, Rankins and others that the prosecutrix had the reputation of being chaste until her pregnancy developed."

We think the evidence supports the judgment.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, PRESIDING JUDGE.—I can not agree to this affirmance for several reasons, which I will file later.

### ON REHEARING.

### February 28, 1912.

HARPER, JUDGE.—At a former day of this term this case was affirmed, and appellant's attorneys have filed a motion for rehearing, in which they vigorously insist that this court erred. There are one or two expressions in the motion out of the ordinary, and to which we will have occasion to refer in the opinion. We copy them here. It is said:

"It is with some degree of modesty that counsel for appellant approaches a discussion of the complaints made to the opinion of affirmance. We feel that it is an effort to convince an unwilling mind of the correctness of the position taken. We trust, however, that the slight discord now existing in this honorable court, and well known to the bar of this State, shall in no manner militate against that fair consideration of the propositions embodied herein to which we know they are entitled.

"We feel that the opinion does counsel for appellant a slight injus-

tice in refusing to consider the assignment presenting the misconduct of the jury, as well as the criticism to the court's charge upon accomplice testimony.   .   .   .

"We have endeavored to cite such authorities as are directly applicable to each proposition, and have covered the questions as carefully as we could. It is not so much that this man should be restrained for three years, but the punishment and violence that will be done to the criminal jurisprudence of this State, should this case be affirmed, that becomes paramount. Surely Hurt, Willson, White, Henderson, Brooks, Davidson and Ramsey are not myths, and surely the best part of the life, intellect and energy of each has not been devoted to the establishment of a criminal jurisprudence of this State of which it is proud, that must now at the stroke of a pen be completely abolished."

As appellant complains that this court did him an injustice in two particulars, we will discuss them first.

1. As to the assignment presenting the question of the misconduct of the jury, in that it is alleged that the jury discussed the failure of defendant to testify, this allegation is not supported by the affidavit of a single juror or any other person. The district attorney filed a contest, and states "the State denies all and singular such allegations, and holds the defendant to strict proof of the same, and in answer to such allegations say that no such misconduct occurred as therein stated." In the record there is *no evidence* in support of the allegation contained in appellant's motion, filed either during term time or after term time. Court adjourned January 21, 1911, and on March 16 appellant filed a bill of exceptions relating to this matter, but in this bill there is not included the testimony of a single witness, if any testified. If the bill had been filed in term time it should have presented the testimony, for we can not review the action of the court without having the evidence before us. But this bill was not filed until about sixty days after court adjourned, and it has been held that our statutes permitting bills of exception and statement of facts after term time, have no reference to issues of fact formed on grounds set up in the motion for new trial. As counsel seem to think that if this rule of law was announced by the able men who preceded us, then no one has cause for complaint, consequently we will only cite opinions written by them, and, of course, counsel would not expect us to give our sanction to any rule of law that would tear down and overrule the criminal jurisprudence of this State, and of which it is proud, to which they devoted the best part of their lives, intellect and energy to establish. The right to file any paper after the term of court is statutory, and if it is not found written in the statute, no authority to do so exists; and in the case of Black v. State, 41 Texas Crim. Rep., 185, our eminent presiding justice, Judge Davidson, well expressed this thought. In that case he says, in discussing the question here involved:

"It is evidence to our minds that these statutes refer exclusively to the statement of facts adduced on the trial of the case itself, and have no application to issues of fact formed on grounds set up in the motion for new trial. Except where the statute makes provision for the filing of papers, which shall become a part of a record on appeal, after the adjournment of court, these papers must all be filed during the term. Our statute has not made provision for the filing of evidence, either 'affidavits or otherwise,' which is adduced for the purpose of sustaining grounds of the motion for new trial, and we are not cited to any cases which so hold. Nearly every ground set out in the Code of Criminal Procedure which forms the basis of a motion for new trial involves matters of fact, and is the subject of contest. While this is true, the statute has not gone further, and provided, as in statement of facts, that this evidence can be filed after the adjournment of court. Nor could a statement of the evidence adduced upon the trial be so filed, except for the warrant of the statute above mentioned. It seems that a contest may be had on the motion for new trial as to the diligence of a defendant in seeking an application for continuance. This may be determined by evidence, and this may be adduced when the action of the court refusing the continuance is called in question by the motion for new trial. But it has been universally held, so far as we are aware, that the action of a court overruling an application for continuance must be perpetuated by bill of exceptions. We take it the same rule applies when the misconduct of the jury is alleged, or when the allegation is that the verdict has been decided by lot, or when a juror has received a bribe to convict, or that he has been guilty of any other corrupt conduct, or that any material witness for the defendant has been, by force, threats or fraud prevented from attending court, or where written evidence tending to establish the innocence of the defendant has been intentionally destroyed or removed so that it could not be produced upon the trial, and where newly discovered testimony is alleged. But these matters must be made part of the record during the term of court. There is no statute authorizing such matters to be perpetuated in papers filed subsequent to the term."

As said before, this opinion was written by Judge Davidson, and it may be added that it was sanctioned and approved by Judges Brooks and Henderson, and they say: "These matters must be made of record during the term of court—there is no statute authorizing such matters to be perpetuated in papers filed subsequent to the term." For other opinions by Judge Davidson to the same effect see Tarllton v. State, 62 S. W. Rep., 748; Reinhard v. State, 52 Texas Crim. Rep., 59; for opinions by Judge Brooks see Mikel v. State, 43 Texas Crim. Rep., 615; Jarrett v. State, 55 Texas Crim. Rep., 550; for opinions by Judge Ramsey see Probest v. State, 60 Texas Crim. Rep., 608; Williams v. State, 56 Texas Crim. Rep., 225. When Judge Ramsey wrote the opinion in the Probest case, Judge Brooks had

retired, and Judge McCord was a member of the court, and while not cited by appellant as one of the eminent jurists who had preceded the present court, yet he gave this rule of law his sanction and approval, and no judge who has occupied a position on this court has held otherwise since its organization.

2.   As to the second proposition above referred to by appellant, the charge on accomplice testimony, about which in the body of the brief he says, "The criticisms to the court's charge referred to in the motion for new trial as contained in bill No. 32, are embodied in bill No. 26, there being no such bill in the record as No. 32, and certainly appellant can not be bound by a clerical misunderstanding of the bill." We are glad appellant concedes that the opinion was correct in stating that there is no bill No. 32 contained in the record, and we will concede that appellant could not be bound by a clerical misunderstanding in numbering the bills.   But is there any criticism in bill No. 26 of the court's charge?   Although the bill is lengthy, for fear that counsel might say we had not correctly stated the record, we will quote bill No. 26 in full:

"Be it remembered that upon the trial of the above entitled and numbered cause, as soon as the court had read and delivered its main charge in writing to the jury, the defendant then and there objected and excepted to the entire charge of the court to the jury, which said charge is as follows, to wit:

"Gentlemen of the jury:   The defendant, John Knight, is on trial before you charged with the offense of seduction, which charge is fully set out in the indictment, which has been read before you. The defendant had plead not guilty to said charge, and the burden of proof to establish his guilt by legal and competent evidence, beyond a reasonable doubt, rests upon the State, and he is presumed in law to be innocent until his guilt is so established, and in case you have a reasonable doubt as to his guilt you will find him not guilty.   You are the sole and exclusive judges of the facts proven, the weight and value of the testimony and the credibility of the witnesses, but the law you get from the court in this written charge and such special charges as may be given you, and you are bound to be governed thereby.

"You are instructed that if any person by promise to marry shall seduce an unmarried female under the age of twenty-five years, in this State, and shall have carnal knowledge of such female, he would be guilty of the offense of seduction.   The term seduction is used in the sense in which it is commonly understood.   It is the leading of an unmarried female under twenty-five years of age out of the path of virtue by a promise of marriage.

"The punishment for seduction is imprisonment in the penitentiary for any term not less than two nor more than ten years.

"You are instructed that the witness, Annie Slaughter, is an accomplice and you can not convict the defendant upon her testi-

mony, however true you may believe it to be, unless the same is corroborated by other evidence in the case besides her own. And the corroboration is not sufficient if it merely shows the commission of the offense, but it must go further and tend to connect the defendant with the commission of the offense.

"In order to constitute the offense of seduction the female must be under the age of twenty-five years and unmarried, and also the defendant must have obtained carnal knowledge of such female under a promise of marriage; that is to say, the female must rely on the promise of marriage and must have yielded her person to the defendant and must have had intercourse with him upon her reliance of a promise of marriage made either at the time the carnal knowledge was had or at some previous time. If the parties were engaged to be married to each other before the act of intercourse, and on account of this engagement and because the female relied upon the same and under such circumstances defendant procured carnal knowledge of the said Annie Slaughter, the crime of seduction would be complete, although the promise to marry was not repeated at the time of the intercourse.

"There are two steps to be taken in order to constitute the offense of seduction:

"First, the female must be induced to yield her person to the man by reason of his promise to marry her, and second, the female must be carnally known by the man, by reason of such promise to marry.

"You are instructed that time is not the essence of a criminal offense, and while the indictment in this case charges the offense to have been committed on or about May 20, 1910, still if the defendant committed the offense of seduction (as the offense has been herein defined to you) at any time within three years before the 6th day of January, A. D. 1911, the date of the filing of the indictment in this cause, the allegation as to time in the indictment would be met.

"In this connection you are instructed that a woman can be seduced but once, and you can not convict the defendant for seduction in this case by reason of intercourse with her on May 20, if any he had or by reason of any intercourse with her, subsequent in their first act of copulation, if any there was, and any such subsequent acts of copulation, if any between the defendant and Annie Slaughter, after the first act of copulation, if any there was, can be considered by you only along with the other evidence in the case in passing upon the guilt or innocence of the defendant, of the offense charged, by reason of their first act of copulation, if any there was.

"By corroborative evidence in this case is meant: Some evidence outside of and independent of the testimony of Annie Slaughter, which tends to show that the defendant, John Knight, had sexual intercourse with her by virtue of a promise to marry her, then or previously made, as heretofore instructed.

"And both the promise to marry as well as the sexual intercourse must be corroborated to warrant a conviction.

"Keeping in view the foregoing general instructions, as to the law and the evidence, you are further instructed that if you believe beyond a reasonable doubt that defendant John Knight did in San Augustine County, Texas, at any time within three years, before the 6th day of January, 1911, the date when the indictment in this case was presented and filed in this court, seduce Annie Slaughter, who was an unmarried female under the age of twenty-five years at the time, and did then and there obtain carnal knowledge of said Annie Slaughter by means and in virtue of a promise of marriage to her, the said Annie Slaughter, previously made by him, the defendant, the said John Knight, then you will find the defendant guilty as charged in the indictment of the offense of seduction and will assess his punishment at a term in the penitentiary not less than two nor more than ten years.

"Upon the other hand, under the foregoing general rules of law and the evidence if you have a reasonable doubt of the guilt of the defendant you will find him not guilty.

"If you find the defendant guilty the form of your verdict will be: 'We, the jury, find the defendant, John Knight, guilty of the offense of seduction as charged in the indictment and assess his punishment at confinement in the penitentiary for a term of ——— years.' Filling in the blank with such term, as you may assess not less than two nor more than ten years. If you find the defendant not guilty, you will simply say so.

"Which said charge is erroneous for the following reasons, to wit: 1st. Because the indictment charges the defendant with seduction of the prosecutrix, Annie Slaughter, of date the 20th day of May, A. D. 1910, and defendant was called upon to answer said charge as predicated upon said transaction, and the prosecutrix testified that defendant had intercourse with her on the said 20th day of May, A. D. 1910, by virtue of a promise of marriage, and that she submitted her person to the defendant because she was afraid that if she did not, the defendant would not marry her, and the case was tried upon the theory that the defendant was guilty of seduction based upon said transaction, but said charge authorized the conviction of the defendant for another and different transaction, happening some sixteen months prior to the date charged in the indictment, to answer which the defendant was not called upon and allowed the conviction of the defendant upon such other, or any other, transaction from that charged in the indictment.

"2d. Because said charge as a whole is argumentative, upon the weight of the evidence, and gave undue prominence to the State's theory, and assumed, as a matter of fact, that the defendant at some time had intercourse with the prosecutrix, Annie Slaughter, by virtue of a promise of marriage, and assumed, further, as a matter of fact,

that the prosecutrix, Annie Slaughter, was corroborated by evidence tending to show defendant's guilt.

"3d. Because said charge is contradictory and confusing, in · that —in paragraphs 8 and 9 the jury is told that time is not of the essence of the offense, and that defendant could not be convicted upon the transaction alleged in the indictment on May 20, 1910, and ·testified to by the prosecutrix, or upon any act subsequent to the first act, but charged the jury that it could consider any such subsequent act as corroborative of the testimony of the prosecutrix, whereas, in paragraph 11 of said charge in the application of the law to the facts the jury is told that they can convict upon any transaction happening within three years from the date of the presentation of the indictment, to wit: On the 6th day of January, 1911, thereby authorizing the conviction of the defendant upon the act of May 20, 1910, or upon any act happening within three years, thus in one instance telling the jury that it could not convict upon the transaction of May 20, 1910, or upon any transaction subsequent to the first act, while in the other instance telling the jury that it could convict upon any transaction happening within three years prior to the 6th day of January, A. D. 1911.

"4th. Because the court in its said charge ignored the defendant's right to have the jury instructed that the prosecutrix must have relied upon an unconditional promise of marriage, and must have been chaste at the time, and that she did not submit her person to defendant because of her lust or desire, the evidence in the case raising these issues in such a way as entitled the defendant to a clear, distinct and an affirmative charge, submitting the same to the consideration of the jury, and defendant here now tenders this his bill of exceptions No. 26 to the entire charge of the court on account of the said errors, and asks that the same be signed, approved and filed as a part of the record in this cause. Which is accordingly done, with the qualification that when the court read the charge the counsel for defendant excepted to the same by saying to the court that he excepted to the charge generally, and gave no specific reason for the same. This should also be an assignment of error if permitted in the record at all and not a bill of exceptions, no reason was given.

W. B. Powell, Judge."

Filed March 16, 1911.

If there is any criticism of the charge on accomplice testimony we have failed to find it. Nor is there in any other portion of the record any error pointed out in the charge on accomplice testimony. In appellant's brief he seeks to assign errors not in the record, but all the judges to whom he refers hold that this can not be done since the Legislature has amended article 723 of the Code of Criminal Procedure.

In Flournoy v. State, 57 Texas Crim. Rep., 88, Judge Davidson

says: "There are some other criticisms of the court's charge in the brief which are not mentioned in the motion for new trial, nor were exceptions taken to these matters on the trial. *As these matters are presented they can not be considered.*"

In Eckermann v. State, 57 Texas Crim. Rep., 287, he said: "There are several questions presented in the brief of appellant with relation to the charge, to none of which was any exception reserved, either in the motion for new trial or during the trial. These matters can not therefore be considered." See also Holmes v. State, 55 Texas Crim. Rep., 331, 116 S. W. Rep., 571; Reyes v. State, 51 Texas Crim. Rep., 421; Wilson v. State, 52 Texas Crim. Rep., 173; Pena v. State, 38 Texas Crim. Rep., 333.

Judge Brooks says: "Appellant in his brief excepts to the 21st paragraph of the court's charge. We find no exception or complaint in the motion for new trial, and same can not be considered. In the absence of a bill of exceptions or a ground in the motion for new trial urging defects in a charge, this court is not authorized to reverse a case." Joseph v. State, 59 Texas Crim. Rep., 82, 127 S. W. Rep., 171; Sue v. State, 52 Texas Crim. Rep., 122; Manning v. State, 46 Texas Crim. Rep., 326, 81 S. W. Rep., 957; Barnett v. State, 42 Texas Crim. Rep., 302; Glascow v. State, 100 S. W. Rep., 933.

Judge Ramsey, in the case of Pollard v. State, 58 Texas Crim. Rep., 299, 125 S. W. Rep., 390, says: "Under the law of this State, before we are authorized to review the correctness of a charge, either by bill of exceptions or motion for new trial same must be objected to, and the particular error pointed out. This the bill does not do." Other opinions by Judge Ramsey: Benevidas v. State, 57 Texas Crim. Rep., 170; Duncan v. State, 55 Texas Crim. Rep., 168, 115 S. W. Rep., 837; Keye v. State, 53 Texas Crim. Rep., 320.

For opinions written by Judge Henderson, see Bailey v. State, 45 S. W. Rep., 708; Magee v. State, 43 S. W. Rep., 512; Spears v. State, 41 Texas Crim. Rep., 527, 56 S. W. Rep., 347.

For opinions written when Judges White, Willson and Hurt composed the court, see Smith v. State, 22 Texas Crim. App., 316; Davis v. State, 14 Texas Crim. App., 645; Mace v. State, 9 Texas Crim. App., 110; Hart v. State, 21 Texas Crim. App., 163; McLin v. State, 29 Texas Crim. App., 171.

For an opinion by Judge McCord, see Kubacak v. State, 59 Texas Crim. Rep., 165, 127 S. W. Rep., 836, and for the views of this court that have always governed it in this matter, see Quintana v. State, 29 Texas Crim. App., 401, where Judge Davidson expresses the rule in terse language.

In the motion for new trial or in no bill of exceptions did appellant call the attention of the trial court to any error in the charge on accomplice testimony, and the decisions of all the judges who ever occupied a place on this court since the amendment to article 723,

hold that if the error, if error there be, is first called attention to in brief of counsel, it can not be considered by this court. To do otherwise would be for this court to violate the plain provisions of the statute. · We have not collated near all the decisions, but at random have selected some writen by the judges to whom appellant refers to in his motion as establishing a criminal jurisprudence of which this State is proud.

3. The next ground in appellant's motion is that we erred in holding that the remarks of Mrs. Mattie Goldsberry were admissible. The part of Mrs. Goldsberry's testimony (which is copied in full in the original opinion) that objection was reserved to is, that the witness said, when Mr. Crockett told her defendant desired to talk to Miss Slaughter in his presence alone, "that she did not think they had any talk coming—all they needed was a marriage license and a preacher," the objections being it "was a conclusion and opinion of the witness, and was not such statement as called for reply on the part of defendant, and was prejudicial in that the jury would accept it as proof of guilt of defendant of the offense charged." If the jury would accept it as proof of guilt of defendant, then it occurs to us that it was such a statement as called for a reply from defendant. However, in his motion for rehearing appellant now says: "Her statement was but the expression of an opinion not that there had been criminal intimacy between the two, but merely that she thought they ought to get married." In the bill he states that the jury would accept it as proof of defendant's guilt of the offense of seduction, and if it had no such meaning and tendency, we fail to see how its being admitted in evidence could have been harmful. Either it charged appellant with the commission of the offense, or it would be a harmless remark. But under the record and the bill we think it specifically charged appellant with having seduced Miss Slaughter. In the bill and in the record it is shown that appellant had a complaint filed against him charging him with the seduction of Miss Slaughter; that an examining trial was held, and he was bound over to the grand jury to answer this charge. On Thursday following the trial the first of the week he called Miss Slaughter and requested an interview; she went with Mrs. Goldsberry (her aunt) to the home of Mr. Crockett (his relative) to have this interview. When Miss Slaughter and her aunt arrived at Mr. Crockett's, the aunt was informed she could not be present during the interview, but only Miss Slaughter, defendant and his relative, Mr. Crockett. Her aunt, Mrs. Goldsberry, objected to this, and stated all that was needed was a marriage license and preacher. Appellant, being under a charge of seducing this young lady, and bound over to the grand jury on such charge, could and did know why Mrs. Goldsberry thus addressed him, and that a marriage license and preacher were needed because of his conduct. It made a direct charge in appellant's presence, and yet he did not say then he had not promised to marry the young lady, did

not say that the charge she had brought against him was untrue, or make any statement to indicate that he was being wrongfully prosecuted, or tended to show that he was innocent of the offense.

In the case of Browning v. State, 26 Texas Crim. App., 432, Judge Willson says, when the court was composed of himself, Judges Hurt and White: "A sister of the deceased came up while appellant was sitting on his mule at the gate. Defendant sees her and starts to go; she charges him with the murder; those standing by heard the charge; he must have heard it, yet he does not deny—does not say one word in answer to the charge, but rides hurriedly away. His silence and conduct are an admission of the truth of the accusation," citing Whart. Crim. Ev., 8th ed., sec. 680; Tyler v. State, 11 Texas Crim. App., 388. For other opinions so holding by Judges White, Willson and Hurt see Clement v. State, 22 Texas Crim. App., 23; Conner v. State, 17 Texas Crim. App., 1; Sauls v. State, 30 Texas Crim. App., 496; Moore v. State, 15 Texas Crim. App., 1; Holden v. State, 18 Texas Crim. App., 91.

In the case of Rice v. State, 49 Texas Crim. Rep., 569, Judge Henderson says: "The fact that she accused her husband with the administration of the drug through the syringe might be an opinion or conclusion and not a fact within her knowledge. But this, it seems to us, would be admissible upon the ground that it was a charge directed against him, and which he was called upon to answer; and the fact that he did not might be taken as a circumstance against him, suggestive of a consciousness of guilt." See also Bennett v. State, 39 Texas Crim. Rep., 639, 48 S. W. Rep., 61.

In the case of Rice v. State, 54 Texas Crim. Rep., 149, Judge Brooks upholds the above opinion of Judge Henderson, and in the latter case cites a number of authorities. See, also, Smith v. State, 44 Texas Crim. Rep., 218.

In the case of Davis v. State, 54 Texas Crim. Rep., 236, Judge Ramsey says: The witness testified: "Mr. Hale and I were standing by the stair-steps leading up to the Cummings House, and I called him to me. I told him that his folks were accusing him of murdering my sister, and I wanted him to straighten it up, and he said they would tell me plenty of damn lies. His step-father, Mr. Hale, was standing there, and said: 'You can accuse them of telling damn lies, that it was the truth and you know it,' and the defendant made no reply to this. This testimony was clearly admissible."

For an opinion of Judge McCord holding this character of testimony admissible, see Elliott v. State, 58 Texas Crim. Rep., 200, 125 S. W. Rep., 568.

In the case of Humphrey v. State, 47 Texas Crim. Rep., 262, in an opinion by Judge Davidson, the following testimony is held to be admissible: "I said: 'What is the matter?' Angelina Wooten replied, 'Mack has ravished Eunice.' Defendant was shown to be present and made no reply." And in the case of Stanley v. State,

48 Texas Crim. Rep., 533, Judge Davidson, speaking for the court, says:

"Link Arnold was permitted to testify that on the night after Beckham was shot, defendant was at his home, and about 11 o'clock he said to defendant that Spot Jordan and Lovell had been at his (witness') house that night, and told him that defendant had been accused of the shooting of Beckham the night before. He further said to defendant that· Jordan had told him (witness) in said conversation that he had just come from old man Bill Stanley's house (father of appellant) and that old man Stanley told Jordan that defendant did not stay at his (father's) house on Friday night; that being the night that Beckham was shot; and that the father of defendant told Jordan that defendant stayed all night at Link Arnold's on Friday night—the night that Beckham was shot. Objection ·was urged to the introduction of this evidence on the ground that it was hearsay; was not the evidence of Bill Stanley, but the statements of the witness Arnold, purporting to be a .statement made by Jordan to Arnold, and told by Arnold to defendant. We do not believe this comes within the rule of hearsay. These conversations were reported to appellant in person and called on him for a reply, in regard to the alibi. The theory of appellant was an alibi, and that he stayed at his father's house the night of the shooting. Here was the statement of the father brought home to appellant denying that fact. If the statements had been made in the absence of the defendant, and not brought home to him, the question of hearsay would have been clearly in the case. But when these statements were actually brought home to his attention, and repeated to him in person, it occurs to us that it was legitimate to be shown the jury." For other opinions by our presiding judge see Brown v. State, 32 Texas Crim. Rep., 119; Johnson v. State, 47 Texas Crim. Rep., 523; Williams v. State, 53 Texas Crim. Rep., 2. We might quote opinions written by. the present, members of the court, such as Lagrone v. State, 61 Texas Crim. Rep., 170, 135 S. W. Rep., 122, but judging by the tone of appellant's argument he would not consider them authoritative, and we content ourselves with referring to the opinions of the eminent judges whom he names.

4. The next ground in the motion is that the court erred in admitting the statement of defendant when he said that "he was not monkeying with 'coons'—that he was going into the best parlors in the town where he was getting better stuff than that." In the case of Hinman v. State, 59 Texas Crim. Rep., 29, 127 S. W. Rep., 221, when the court was composed of Judges Davidson, Ramsey and McCord, in speaking for the court, Judge Ramsey says:

"It is claimed that the court erred in permitting the witness Mills Davenport to testify to statements made by appellant, in substance, .to the effect that he was the cause of Miss Barefield being in a pregnant condition, and also a statement to Davenport to the effect, in

substance, that he contemplated stealing a girl and invoked his assistance. These statements, we believe, were admissible on the issue: First, that appellant had had carnal intercourse with the prosecutrix; and, second, for the purpose of corroborating the prosecutrix on the issue of their engagement. Davenport testified that some time in the spring of 1906 appellant, in a conversation with him, stated that he was expecting to steal a girl, and might want some help, and that this conversation was had at a time when appellant was going with the prosecutrix. It was shown also by the testimony of Miss Barefield that her father objected to the defendant coming to his house and keeping company with her. J. R. Davis testified that the defendant came to him some time in the spring of 1906 and requested him to bring the prosecutrix to Eastland, stating that he (the defendant) intended to marry her, that her father was bitterly objecting, and that he desired his assistance. In view of the relations of the parties, their frequent association, and the fact that several of the witnesses say that appellant was madly in love with Miss Barefield, and in the absence of any testimony that his remark about stealing a girl could have had application to anyone else, we think it is so connected with, and had such evident and certain relation to, Miss Barefield as to render it clearly admissible."

In this case the testimony shows that appellant had carnal knowledge of Miss Slaughter twice in the parlor of her father's residence. It shows that she belongs to as good a family as lived in the town. She was the only girl that the record discloses to whom he was paying attention and with whom he had intercourse in the parlor, and as said in the Hinman case, supra: "In the absence of any testimony that his remarks about stealing a girl could have had application to anyone else, we think it so connected with, and had such evident and certain relation to, Miss Barefield as to render it clearly admissible." In this record it is further shown that appellant told this witness subsequently that "he had gotten Miss Slaughter knocked up." We discussed this question so fully in the original opinion that we do not deem it necessary to again do so further, as all the authorities that appellant refers us to relate to threats and not to cases of this character, when the prosecuting witness must be corroborated, and it is possible to do so only by circumstantial evidence. The above quotation is directly in point, and in the original opinion will be found decisions by all the judges to whom he refers.

5. The next ground of appellant's motion is that we erred in holding that the testimony of Mrs. H. J. Matthews and others admissible. These witnesses were permitted to testify that the reputation of Miss Slaughter for virtue and chastity was good. Appellant in his motion states that we refer to no Texas authorities. We might retort in kind and say he refers to no Texas case for authority that such testimony is inadmissible. But we think he is in error in saying that in the original opinion we referred to no Texas cases. In the sixth

paragraph of the opinion will be found a long list of cases decided
by this court, and by the eminent judges to whom he refers. In
the case of Jeter v. State, 52 Texas Crim. Rep., 212, when this court
was composed of Judges Davidson, Henderson and Brooks, Judge
Davidson, in speaking for the court, says:

"Harper testified for the State, among other things, to the good
reputation for chastity of the prosecutrix. A bill of exceptions is
signed by the court showing this condition in regard to this witness'
testimony: That he would have on cross-examination testified that
the general reputation of the sister of prosecutrix for chastity with
whom Ella Taylor lived and associated was bad and had been bad
for two or three years before this trouble came up, and that witness
knew of his own knowledge of her unchaste acts. This testimony
was excluded. The court would not even permit counsel for appel-
lant to make any statement as to why said testimony was material
or what witness would testify. The court qualifies the bill as fol-
lows: 'The sister of prosecutrix, whose reputation was inquired about,
lived with her father and mother (and the testimony so showed with-
out contradiction). The prosecutrix also lived there, and the court
being of the opinion that a girl of prosecutrix' age was not compelled
to abandon her home nor were the father and mother compelled to
ostracize one wayward daughter in order to avoid an aspersion upon
the character of another and therefore sustained the objection.'

"Another bill in regard to this same witness, in substance, is as
follows: That Harper was the third witness for the State and testi-
fied that he knew the general reputation of the prosecutrix for chas-
tity and that it was good. He was then asked by the defendant if
he had a conversation with Bud Jeter on his gallery at Elm Grove
before this trouble came up, in which he stated that the reputation
of the Taylor girls for chastity, meaning Ella and her older sister,
living with her in her father's family, was bad. The witness answered
that he had the conversation at the time and place mentioned, and
that he only stated that the reputation of the older sister of prosecu-
trix was bad. On motion of the district attorney, and over appel-
lant's protest, the court withdrew the answer from the jury, and in-
structed them not to consider it as evidence. Counsel protested
against the action of the court and offered to submit an authority to
the court in support of the admissibility of said testimony, and the
court stated in the hearing of the jury that he did not care to hear
from counsel on any authority on that point, to which action of the
court in excluding said testimony of the witness, Harper, from the
jury and refusing to permit defendant to attempt to show the admis-
sibility of said evidence, the defendant then and there excepted, etc.

"In regard to the first bill of exceptions, we are of opinion that it
was admissible. The facts show that the older sister had a bad rep-
utation, and that she and the prosecutrix were in the habit of going
to social gatherings in the neighborhood unattended by any male

friend, but on their return from these gatherings the young men would attend them home. See Caviness v. State, 42 Texas Crim. Rep., 420. In the Caviness case it was proposed to be shown that the prosecutrix lived at the same house and associated with her two sisters and niece; that they were women of bad reputation, and that they were delivered of illegitimate children. On objection of the State this testimony was excluded. It was offered as tending to prove the real character of the seduced female. The prosecutrix in that case was delivered of a fully developed child in February, 1900. The court said in that case, 'If she was an associate of these women at the time indicated, it would be a fact tending to show her character for want of virtue and chastity.' See also Mrous v. State, 31 Texas Crim. Rep., 597. It was held in that case the evidence should have gone to the jury. . . .

"In regard to the second bill, it is shown that evidence was introduced through the witness Harper that he had stated to Bud Jeter that the reputation of the older girl, prosecutrix' sister, was bad, limiting his statement of bad reputation alone to the older sister. The court withdrew the answer of the witness and instructed the jury not to consider it and for the same reason stated by the court for the rejection of the testimony in the bill above discussed. We think this testimony was properly admitted and ought not to have been withdrawn."

In the case of Caviness v. State, 42 Texas Crim. Rep., 421, Judge Davidson again writing the opinion, it is held: "Asked if she did not then associate with them generally. This she affirmed. It was then proposed to prove by her that it was a fact that while so associating with these women each of them were delivered of illegitimate children. This was ruled out on objection by the State. This evidence was offered as tending to prove the real character of the seduced female. The prosecutrix was delivered of a fully developed child in February, 1900. If she was the associate of these women at the time indicated, it would be a fact tending to show her character for want of virtue and chastity."

The rules of law applicable to the admissibility of testimony are the same whether the State is offering the testimony or the defendant. There is no law which would permit the defendant to offer certain character of testimony and which would exclude the State from doing so. As said in the original opinion, under our decisions the character for virtue and chastity of the alleged seduced female is an issue from the inception to the ending of the case, and if a defendant can prove to the satisfaction of the jury that the alleged seduced female was not a chaste woman, or create in their minds a reasonable doubt of that fact, he, under our law, would be entitled to an acquittal. Consequently it is an issue of fact in every case and it is incumbent upon the State to make the proof that she is a virtuous and chaste woman. In this State it seems under the above decisions

that even the reputation and acts of her sister can be proven, and certainly if that is the law no one would contend the reputation of the prosecutrix could not be proven. In the case of State v. Hill, 4 S. W. Rep., 121 (a Missouri case), it is held: "There was no error in allowing the State to prove the good repute of the prosecuting witness, as a part of the case of the State. Good repute is made an element of the offense by the statute, and as both parties are presumed to be innocent, the better conclusion seems to be, it is said that some such evidence should be brought forward in the first instance. (Bishop St. Crimes, 2d ed., sec. 648.) Mr. Bishop states this to be the rule. under statutes which make 'previous chaste character' an element of the offense." While our statute does not mention 'good repute' or 'previous chaste character,' yet the decisions of this court have written into the law of seduction both good repute and previous chaste character, for if a person seduce a female by promise of marriage, and this fact is proven beyond doubt, yet if he can create a doubt in the minds of the jury she was not at the time he committed the offense of good repute and chaste, he may plead it as a defense to be submitted to the jury, thus making her previous wrongdoing a defense for a crime committed by himself." For other decisions see section 6 of the original opinion, including Texas cases.

6. These are all the assignments in the motion except some that relate to the charge of the court. We have copied hereinbefore bill No. 26 in which the charge of the court is presented. In the first place, by the qualification of the court as shown by the copied bill, the court says: "With the qualification that when the court read the charge the counsel for defendant excepted to the same by saying to the court that he excepted to the charge generally. No reason was given." But by an unbroken line of authorities in opinions delivered by the various eminent judges named by appellant, noted above, this court has held that when a person accepts a bill as qualified by the court, he is bound by the qualification. (Hardy v. State, 31 Texas Crim. Rep., 289; Levine v. State, 35 Texas Crim. Rep., 647; Brown v. State, 32 Texas Crim. Rep., 119; Boyett v. State, 2 Texas Crim. App., 93; Lindley v. State, 11 Texas Crim. App., 283; Blain v. State, 34 Texas Crim. Rep., 448; Burt v. State, 38 Texas Crim. Rep., 397, and cases collated in White's Annotated Code of Criminal Procedure.) The qualification further states the objections urged in the bill should have been assigned as error. In the motion for new trial there are no such errors assigned as appellant presented in the brief and now presents in his motion for rehearing. In the case of Phillips v. State, 19 Texas Crim. App., 165, when Judges White, Hurt and Willson composed the court, it was held: "In criminal cases we are not aware that the exceptions to the charge required to be noted should point out and specify particularly the objection-

able portion or portions excepted to at the time of asking leave to reserve exceptions. This is scarcely practicable. To make specific objections in a majority of cases requires time and a thorough scanning of the language used in the charge. All that is required is that general exceptions be taken at the time, with request for time to prepare a bill containing the specific objections, *to be prepared before the verdict is returned* in order that the court may have an opportunity to correct the charge if so desired." Upon Presiding Judge Davidson's accession to the bench, in the case of Quintana v. State, 29 Texas Crim. App., 401, he held: "The court's qualification of this bill of exceptions is thus stated: 'When the charge was read to the jury, the defendant's attorney excepted to the charge without assigning any reasons.' We are not called upon to consider this exception. The primary object or purpose of a bill of exceptions reserved to the charge of the court is to call the attention of the trial judge to the particular matter complained of so that he may be afforded an opportunity to correct any error he may have fallen into, to the end that the rights of the defendant may not be prejudiced. A general exception does not accomplish this."

Both of these opinions were written prior to the amendment of article 723 of the Code of Criminal Procedure, but in both of them it was held a general exception was insufficient to bring any question before this court for review, but before return of the verdict by the jury, the error, if error there was, must be specifically pointed out to the trial judge. In this case this was not done, if we accept the statement and qualification of the trial judge. However, when the Legislature amended article 723 it wrote into the law of this State the provision that the judgment shall not be reversed unless the error appearing in the record (if error there be) shall be excepted to *at the time of the trial* or on the motion for a new trial. In the motion for a new trial in this case no error is pointed out in any paragraph of the charge of the court. The court in qualifying the bill of exceptions No. 26, on which appellant relies in his motion for rehearing, says that at the time of the trial a general exception to the charge as a whole was reserved, and that no reasons were given and no error attempted to be pointed out. Thus it is seen if we accept the qualification of the court, and under the authorities hereinbefore cited, if we follow the "criminal jurisprudence of this State as established" by the learned and able judges named by appellant, we must do so, then we can not consider the errors or supposed errors pointed out in a bill of exceptions filed two months after the adjournment of court, for the trial judge in his qualification says that this was the first time appellant had assigned such matters. In Flournoy v. State, 57 Texas Crim. Rep., 88, it is said by Judge Davidson: "There are some criticisms of the charge of the court in the brief which are not mentioned in the motion for new trial, nor were exceptions *taken to these matters on the trial*. As these matters are presented they can

not be considered." In Benevidas v. State, 57 Texas Crim. Rep., 170, Judge Ramsey says: "There was no complaint of the court's charge made in the motion for a new trial, and under the terms of art. 723 of our Code of Criminal Procedure, and *a long line of decisions in this State,* we are not authorized to consider matters raised on appeal." Again in Keye v. State, 53 Texas Crim. Rep., 320, the same learned judge holds: "In this court complaint is made that the court erred in not charging, under the facts of the case, on the issue of self-defense. An inspection of the court's charge discloses the fact that nowhere in it was the issue of self-defense submitted to the jury. It is the contention of counsel for appellant that the facts taken together raised the issue of self-defense. No request for a submission of the defense of self-defense was made in the court below, nor was complaint made in appellant's motion for a new trial of such failure to so charge in the trial court. Article 723 of the Code of Criminal Procedure is as follows: 'Whenever it appears by the record in any criminal action, upon appeal of the defendant, that any of the requirements of the eight preceding articles have been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of the defendant, which error shall be excepted to at the time of the trial, or on motion for a new trial.' Since the adoption of this article of the Revised Statutes in 1897, it has uniformly been held by this court that where no exceptions were reserved to the charge of the court, or the failure of the court to give requested charges, either by bills of exception reserved at the time, or in the motion for a new trial, appellant is not in a condition to complain. Bailey v. State, 45 S. W. Rep., 708. It has even been held that where there is material error of an affirmative character in the charge given, unless such error was excepted to at the time of the trial, or on motion for a new trial, such erroneous instructions are not ground for reversal. Pena v. State, 38 Texas Crim. Rep., 333. To the same effect see Manning v. State, 46 Texas Crim. Rep., 326, 81 S. W. Rep., 957. So we think it clear that appellant is not entitled to a reversal of the case in view of the record, as here presented, even if it be conceded that the court should have charged on self-defense."

The opinion in the Bailey case herein referred to was written by Judge Henderson; in the Manning case by Judge Brooks, and in the Pena case by Judge Davidson, and in the original opinion we were but following the decisions of these able men. Other authorities might be cited by each of them, but as many are cited in the case of Ryan v. State, 64 Texas Crim. Rep., 528, 142 S. W. Rep., 878, it is here referred to without again copying the citations.

But if we were to ignore "the criminal jurisprudence of this State as established" by those able men, and consider the supposed errors pointed out for the first time two months after the motion for new trial had been overruled, and the adjournment of court, do the

grounds alleged by appellant in bill No. 26 (herein copied) present reversible error? In the first ground in said bill it is alleged that because the indictment alleges the offense to have been committed on or about May 20, 1910, that if the act of intercourse took place prior to that time on which the seduction (under our decisions) must be based, he could not be convicted. This question is so fully discussed in paragraph eleven of the original opinion we do not deem it necessary to again do so. The authorities are there cited, and it presents no error.

The second is that the charge as a whole is argumentative, upon the weight of the evidence, and gave undue prominence to the State's theory, and assumed that appellant had carnal knowledge of the prosecutrix, and assumed that her testimony was corroborated. The charge as a whole is virtually copied in bill No. 26 herein quoted, and one who reads same can see that none of these grounds are well taken. The charge, among other things, says: "In this connection you are instructed that a woman can be seduced but once, and you can not convict the defendant for seduction in this case by reason of intercourse with her on May 20, *if any he had,* or by reason of any intercourse with her subsequent to their first act of copulation, *if any there was,* and any such subsequent acts of copulation, *if any,*" etc., and then in two paragraphs of the charge, at the beginning and ending of the charge, the jury is instructed if they have a reasonable doubt of defendant's guilt they will acquit him.

Neither is the charge contradictory and confusing as alleged in said bill. The court in his charge had told the jury as above stated, that defendant could not be convicted for the act of intercourse on May 20, if any, nor any act of intercourse subsequent to the first act of copulation, if any, and then in paragraph eleven, complained of, had instructed the jury: *"keeping in mind the foregoing general instructions, as to the law and evidence,"* etc., thus making it all a part of said paragraph. No intelligent juror could have been misled and the criticism is hypercritical.

The last ground in the bill is "that the court ignored defendant's right to have the jury instructed that the prosecutrix must have relied on the unconditional promise of marriage, and must have been chaste at the time, and that she did not submit because of lust or desire," etc. In this connection we may as well discuss the ground in the motion for rehearing wherein appellant claims that the court erred in failing to give the following special instruction: "You are further instructed, as a part of the law of this case, in connection with the main charge of the court, that if you believe from the evidence that the alleged prosecutrix, Annie Slaughter, did not rely solely and alone upon the absolute and unconditional promise of marriage by the defendant, if any such promise there was, but that she was moved to let the defendant have the alleged sexual intercourse with her through fear, or partly through fear and partly through

lust, then it is your duty to acquit the defendant, and this though you should believe from the evidence that defendant promised to marry prosecutrix, which promise was a part, though not the sole and only reason of inducement, or if you have a reasonable doubt as to facts, you will return a verdict of not guilty."

Appellant does not state that there is any testimony that Miss Slaughter was unchaste, but says "a defensive issue can be raised by circumstantial evidence the same as any other and it is the duty of the court to instruct the jury upon all legitimate deductions, and the issue ought to have been affirmatively submitted."

Thus it is seen that in one paragraph of the motion appellant contends it was error for the court to permit Mrs. H. J. Matthews and others to testify that the alleged seduced female was a pure and chaste woman, but in this ground insists that the fact whether she was a pure and chaste woman was an issue in the case, and says the question was raised by circumstances in the case, and the defendant was entitled to an affirmative charge on this issue. If the evidence for the defendant raised the issue that she was not a pure and chaste woman, and "was moved to let defendant have the alleged sexual intercourse through fear, or partly through fear and partly through lust," then it may be conceded under our decisions defendant was entitled to have the issue affirmatively submitted. All the witnesses in the case testify that Miss Slaughter was a pure and chaste woman. No witness testifies otherwise, and now what are the *circumstances* that appellant says raises the question as an issue of fact to be decided by the jury? The only witness introduced by defendant was his mother, who testified:

"I remember the contents of the letter in a general way. She first wrote that she would write and tell him her condition, it was concerning her health; she was in bad health and she was uneasy about herself and she did not know what was the matter for certain; that the doctor told her that her spleen was enlarged, but she had missed five months; she said it had been five months since she had seen any signs and she was uneasy and Dr. Davis had told her he thought her spleen was enlarged and she was taking medicine from him, iron tonic to bring her right, that she was uneasy, seemed like she was larger than common, and she wrote that she did not know what to do about it and wanted Boy to tell her, she wanted John to advise her what to do as a friend, as she was afraid to tell her folks about it, and she wanted him to advise her, and she said he wasn't under any obligations to her; she just wanted his advice what to do and she was uneasy, and that was about the most there was in the letter."

She further testified that the letter had been burned up. All the letter, her writing to him about her condition, and asking what to do, would tend to corroborate the prosecutrix, other than the sentence, "she said he wasn't under obligations to her." What is meant by this the witness and no other witness seeks to explain. Miss

Slaughter denies writing any such letter. This would not tend to show and would not raise the issue that she had yielded to him "through fear, or partly through fear and partly through lust." If it had any tendency, and she wrote the letter, it. might suggest that she, by the use of those words, was not claiming that defendant was responsible for her condition—not in the slightest that any other had ever had intercourse with her, but that she was willing to blame herself alone, and bear alone her fall, although caused by him. It might go to the issue of fact as to whether he had had intercourse with her at all, and this issue was submitted twice by the court in instructing the jury that if they had a reasonable doubt of this, as well as any other fact, to acquit defendant. The only other fact or circumstance in the case that could be relied on as raising these matters, defendant introduced a portion of the testimony given by Miss Slaughter at the examining trial (just prior to the time that complaint is made of the testimony of Mrs. Goldsberry). It is as follows: "He had been going to see me about two years before we became engaged. I do not remember how he approached the subject of marrying. He never did come plain out and. engage to marry me. At the time he first had intercourse with me, and at all of the other times that he had intercourse with me up until last May, there was nothing said about marrying. The first act of intercourse was in January, 1909."

If this was all her testimony, and no explanation given by her, this might give some support to the contention. of appellant, but when he read her testimony as a whole, it shows that at the very time of intercourse she said "he did not come plain out and engage to marry me," but reading the testimony as a whole, the engagement took place long prior to that time. The letters, some fifty in number, written by appellant are couched in the most endearing terms, and corroborate the prosecutrix in saying that the engagement had taken place prior to this act of intercourse. In some letters he says: "I received a letter from Jack today, and he said he and Blanche had broken up at last, and you don't know how I feel about it. I wonder if such sad and heart-breaking experience will ever overtake you and I? It never will on my account, I know." "Oh, dear, it is getting harder for me to tell you good-bye even when calling or anywhere else. I could be happy with you forever. I am sure that I would never want to leave you for anything in the world. Sweetheart, if I could just see you now I expect I would love you almost to death." "No, Sweetheart, it can not be true that we are to be separated like this. I earnestly hope for a speedy day when you will be all mine."

And shortly after she says the first act of intercourse took place he writes: "I am so glad that you love me, Annie dear. I can not help but think how you looked Friday night when ———— I know you thought you were doing wrong, but you were not, for what I

told you was all true." Any number of expressions similar to the above could be copied from the letters, and when we take the testimony of Miss Slaughter as a whole, the three answers to questions, claimed by appellant to raise the issue of lust, and that she did not rely solely on the promise of marriage, the testimony did not raise such issue in the case. By the method of cross-examination appellant sought to create in the minds of the jury a suspicion that such might be the case, but the answers and testimony of the witness do not make it a question in the case. She testifies that at the third act of intercourse she told appellant "that such proceedings must stop or we should get married. He said it didn't make any difference, we were going to get married anyhow, and he didn't see why I shouldn't want to grant his wishes, but he said, 'I can quit coming to see you if you want me to.' I told him I didn't mind his coming, but such proceedings as that I wouldn't go through any more. Such proceedings gave me pain and very much humiliation." She says that in that conversation he asked her to let him see the engagement ring he had given her, and kept it and did not return it for some time. That when he did come back that upon the renewal of the promise of marriage, she again submitted to him, fearing that if she did not do so he would not carry out his promise to marry her. As we read this record there is nothing to suggest that she yielded through fear or lust, or that she relied on anything other than the unconditional promise to marry. There is no "conditional promise" testified to by any witness, and the only time the word "fear" is used is at the time of the fourth act of intercourse, when she says that having told him such proceedings caused her pain and humiliation, and must stop, he quit coming to see her for a while, and when she again came she yielded to him for fear he would not redeem his promise of marriage. What pure and chaste woman, having yielded her virtue under such conditions, when request was again made, but would fear that if she did not yield she would fear that he might not save her honor by carrying out the promise? Appellant, as before stated, does not claim that the testimony raises such issues, but the circumstances are such that "legitimate deductions" would raise the issue. We do not think that the evidence would justify any deduction other than that the prosecutrix was a pure and chaste woman at the time appellant first had sexual intercourse with her; nor would the circumstances justify a deduction that she yielded "through fear or partly through fear and partly through lust." The authorities cited by appellant correctly present the law when the evidence raises the issue, but when the question is not raised by the evidence, the court did not err in refusing to give the special charge, and the charge of the court presented the law applicable to the issue as fully as the testimony warranted. If it could be said that there is some slight evidence, the rule as laid down by Chief Justice Roberts in Bishop v. State, 43 Texas, 402, has always been adhered

to, even by the eminent judges of this court named by appellant
above.  He says: "When the evidence tends sufficiently to the estab-
lishment of a defense or mitigation of the offense charged as to rea-
sonably require a charge as applicable, is a question of sound judg-
ment, to be exercised by the district judge, in the first instance, and
afterwards by this court on appeal.  If its force is deemed very
weak, trivial, light, and its application remote, the court is not re-
quired to give a charge thereon."  This is approved by Judge Hurt
in the case of Elam v. State, 16 Texas Crim. App., 42, he saying:
"This evidence it may be conceded tends to raise the presumption
that this was his condition when the sale was made, but the ques-
tion arises with what force does it thus tend?  Has it that pertinency
and force which would render it reasonable to infer that the jury
would have been influenced by it in arriving at their verdict, if the
law applicable thereto had been given in charge?  We are of the
opinion that it has not.  On the other hand, we believe that not-
withstanding there is evidence tending to present this defense, still
its pertinency and force are so remote and weak that a failure to
charge the law applicable to this defense worked no injury to the
rights of defendant."

In Odle v. State, 13 Texas Crim. App., 612, Judge Hurt, speaking
for the court, lays down the rule that the better practice is that
where the evidence tending to establish a certain theory is so meagre
that the court, if it had the power, would not hesitate to set aside the
verdict based thereon, the court in his charge should ignore the theory
so presented.

These decisions of these two able and renowned lawyers have al-
ways been followed by this court, and we quote them for the reason
that while we are of the opinion that the evidence does not raise any
such issue as contended by appellant, yet if it does slightly do so, it
is so slight it was not error for the court to fail to charge thereon.

The claim that there was error in the court's definition of seduc-
tion is not well taken.  We are cited to the cases of Gorzell v. State,
43 Texas Crim. Rep., 82; Sledge v. State, 63 S. W. Rep., 317.  By
reading these two cases it will be seen there was no definition of
seduction given, while in this case in two paragraphs of the charge
the court gives a very full definition of the offense, and one which
was approved in Carter v. State, 59 Texas Crim. Rep., 273, 127 S.
W. Rep., 215; see also Faulkner v. State, 53 Texas Crim. Rep., 258;
Putman v. State, 29 Texas Crim. App., 454, and Branchs' Crim. Law,
sec. 738.  Defendant selects only one paragraph of the charge and
criticises it, when if the whole charge is read, it is seen that the
meaning of the word as applicable to a case of this character is
fully and completely stated.  However, in this case, as in the other,
in no bill of exceptions and in no ground of the motion for new trial,
is it attempted to point out any error in the charge in this par-

ticular, and, therefore, we would not be authorized under the law to review it.

While we have heretofore given reasons and cited decisions of this court why we would not be authorized to consider any error not pointed out in the charge on accomplice testimony, it not having been pointed out or assigned either by bill of exceptions or in the motion for new trial filed in the court below, yet if one will read the charge in full, it will be seen that there is a substantial compliance with article 769 of the Code of Criminal Procedure, relating to seduction, and when we read the charge of the court as a whole, copied herein, and the special charge given at the request of appellant, quoted in the original opinion, it will be seen that no error is apparent of which appellant can complain. Without copying herein the decisions of this court on that point, we refer to sections 964, 965 and 968 of White's Ann. Code of Criminal. Procedure.

Owing to the insistance of able counsel for appellant, and out of respect to the extensive brief filed herein, we have again discussed nearly every proposition involved in the case. The authorities cited in his brief present correct abstract proposition of the law in the main, but the premises upon which he bases his conclusions and argument have no substantial basis in the evidence, and his premise being wrong, of course, the conclusions reached by him in various instances are without merit.

As to the "slight discord now existing in the court," referred to by defendant in his brief, we want to assure counsel and all other members of the profession that all cases are examined and decided upon their merits, regardless of who may represent a defendant, and the same careful consideration is given to each case. No differences, if differences there be, shall or will affect the decision in any case, and each and every one who brings his case to this court on appeal may feel assured that "we will not make fish of one and fowl of another," but the law, as we understand it, will be applied to all alike. The rule of decision as established by the well known and able judges whom he names will be followed and adhered to, except in those cases where the Legislature, within its discretion and wisdom, has seen and may see fit to change the law, but when they do change it, we will follow the rule of law as made by the law-making power.

The motion for rehearing is overruled.

*Overruled.*

PRENDERGAST, JUDGE.—I fully concur.

DAVIDSON, PRESIDING JUDGE (dissenting).—When the judgment was affirmed I noted my dissent. On account of the length of the opinion on the original hearing and the opinion on motion for rehearing, I shall not undertake to follow the matters fully, but rather generalize them, selecting some of the matters that I

deem essentially reversible, and what I think ought to be noticed in view of the fact they are decided contrary to the settled jurisprudence in this State.

1. Over appellant's objection Mrs. Matt Goldsberry was permitted to testify to a statement made by her at the residence of the Rev. George L. Crockett, in the presence of appellant, the prosecutrix, Annie Slaughter, and Rev. Crockett. The witness had gone to the residence of Rev. Mr. Crockett in company with the prosecutrix for the purpose of having a conversation with prosecutrix and appellant. During the visit she stated that "she did not think they had any talk coming, that all they needed was a marriage license and a preacher." Various objections were urged to the introduction of this testimony, which in my judgment should have been sustained. There was no criminality. involved in this language. There was no reference to the fact that prosecutrix had been seduced, or that appellant was charged with seduction. This statement was but the expression of the opinion of the witness, which opinion did not indicate the crime of seduction had been committed, or even that there had been criminal intimacy between appellant and prosecutrix. Appellant made no reply. "It is well settled that it is error to admit in evidence a defendant's silence touching declarations made in his presence unless such statements in effect amount to an accusation against him, and are of a character calling on .him to make reply." This language was used by Judge Ramsey on motion for rehearing in Crowell v. State, 56 Texas Crim. Rep., 480. The Crowell case had been affirmed, and on rehearing the court reviewed one question in the case. The opinion on motion for rehearing will show the statement made in the presence of Crowell by Tucker was, in substance, that a horrible murder had been committed. Objection was urged to the introduction of that testimony. Judge Ramsey said: "It was believed, however, that the charge of the court in respect to this matter rendered the admission of this testimony immaterial, and probably not hurtful. While the case was ably argued on original submission, there was no brief filed further than memorandum of the authorities upon which counsel relied, and in the consideration of the case we seemed to have overlooked the fact that there was nothing in the instructions of the court in respect to the silence of appellant in the face of these declarations of Tucker." Then followed the language first quoted in the Crowell opinion. The following authorities were cited by Judge Ramsey in that opinion, which fully and amply sustain the conclusion reached: 2d Whart. on Ev., sec. 1138; 1 Greenl. on Ev., secs. 108, 199, 200, 233; Loggins v. State, 8 Texas Crim. App., 434; Felder v. State, 23 Texas Crim. App., 477; Ex parte Kennedy, 42 Texas Crim. Rep., 148; Skelton v. State, 51 S. W. Rep., 944; Sauls v. State, 30 Texas Crim. App., 496; Long v. State, 13 Texas Crim. App., 211; Hanna v. State, 46 Texas Crim. Rep., 5; Conner v. State, 17 Texas Crim. App., 1; Ex parte Wilson,

47 S. W. Rep., 996; Baker v. State, 45 Texas Crim. Rep., 392; Com. v. Harvey, 1 Gray, 487; see also Welch v. State, 46 Texas Crim. Rep., 528; O'Quinn v. State, 55 Texas Crim. Rep., 18; Denton v. State, 46 Texas Crim. Rep., 193.

In Welch's case, supra, Judge Brooks, rendering the opinion for the court, used the following language: "If an accused says nothing and remains silent when such question is asked him, his silence can be used as a criminating fact against him; but when he makes no reply to statements having an ambiguous or double meaning, such statements can not be introduced when he is subsequently on trial. In other words, the statement must show some criminality."

We notice in this case Mrs. Goldsberry did not state there had been criminal intimacy between appellant and prosecutrix, nor did she state they had been engaged, but merely her opinion that they should get married. This she could have believed and stated without entertaining the slightest idea that appellant was guilty of any wrong towards prosecutrix, or that he ever had intercourse with her, or that he ever seduced her, or that his conduct had been otherwise than that of an honorable lover. It was not a question propounded to him; it was not the statement of any fact, but merely the expression of her conclusion.

The case of Humphrey v. State, 47 Texas Crim. Rep., 262, is cited by my Brother Harper in support of his position in regard to this question. As I read that opinion it is an authority directly against him. The bill of exceptions in that case was reserved to the introduction of testimony of the witness Underwood, who stated that he asked if Mack Humphrey was guilty. "She replied 'yes.' When defendant heard this answer he made no reply, and there the matter ended. While the same witness was testifying, he was permitted to state that when he went to the house of appellant his wife was crying. This was shortly after the transaction. This bill is explained as follows: 'Jim Underwood had testified that defendant and his wife, together with the assaulted party and other people, were in the room when he got there, and defendant was sitting in the door with his head bowed, and his wife was crying.' Objection was urged that no act or statement of the wife of defendant could be used in evidence against appellant. As this bill is presented, we believe the exception is well taken. The fact that the wife was crying was an indication on her part, if it meant anything, that it was her opinion that appellant was guilty. This called for no response from appellant. It was the act of his wife indicating her feelings in regard to the matter, and was a circumstance which conveyed to the jury the idea that she believed in her husband's guilt. This is a different proposition from that which might be predicated upon a statement of the wife to the husband in the presence of third parties of a criminating nature, for that would call for a reply from him, and it would not have been the wife being forced to testify, but it would

be another witness testifying to acts or conversations occurring between the parties. The act of crying called for no response or reply from the defendant and none was made." The introduction of that evidence was held reversible error. It is in point on the question here involved. The remaining portion of the opinion was in regard to an accusation made by prosecutrix against Humphrey in his presence, that he had ravished her. This was held admissible as being an accusation made by the ravished woman in that case charging appellant with the crime, which he failed to deny, but he bowed his head. That was held admissible. That phase of that case has no relevancy or bearing upon the question here involved. Mrs. Goldsberry had not charged appellant with ravishing prosecutrix or seducing her. The other cases cited in the opinion on rehearing could be followed up and their want of relevancy definitely pointed out, but it would make this opinion too long. The trouble about the cases cited in the motion for rehearing is, while they announce correct propositions of law in the cases wherein they were decided, they are not in point as far as this case is concerned. The cases cited by my brethren seem to have no bearing on this question, and they have been taken from their proper place and made to do service on a question upon which they have no bearing. Either the cases that I have cited in support of appellant's contention ought to be followed, or they ought to be overruled directly.

2. I can not agree with my Brother Harper wherein he holds the testimony of the two witnesses Alvis and Thomson was admissible. By the witness Alvis the State was permitted to prove that he heard a conversation between appellant and Eugene Jeanes on December 3, prior to defendant's arrest on December 4 or 5, in the grocery store of Mr. Phillips, where witness was at work, in which conversation Jeanes stated he had been having intercourse with some "coons." The defendant replied that "he was not monkeying with any coons, that he was going into the best parlors of the town where he was getting better stuff than that." Numerous objections were urged to this. The bill further recites that it was shown by the evidence that defendant at that time had not been with prosecutrix since the 2d week in July, 1910, his conversation having occurred on the 3d of December, 1910, and, therefore, the reference made by appellant about the "parlors" and "stuff" he was getting could not have individuated the prosecutrix. There was an interval of nearly five months since the parties had associated together, and this conversation referred to the "stuff" that appellant was then getting and "parlors" he was then visiting. The name of the prosecutrix was not mentioned in the conversation, and no reference made to her. The bill with reference to Thomson's testimony recites that the State was permitted to prove by Thomson that about twelve months ago and about the first of the year of 1910, defendant stated to him that he would be surprised if he knew from whom he was obtaining inter-

course in the town of San Augustine. Several objections were urged to this. The bill further recites that the defendant had not been with prosecutrix since April 1, 1909, and was not with her after the 20th of April, 1910, and this testimony shows that he could not have referred at the time to the prosecutrix or intended to individuate her in any manner as the party to whom he referred. So it will be seen with reference to the testimony of the witness Thomson that this conversation occurred about the 1st of January, 1910. Appellant had not been going with Miss Slaughter, prosecutrix, since the 1st of April, 1909, and there was no mention of her name in connection with this matter, and, therefore, this could not be held to individuate or point her out as the party to whom he was referring, or to any one of any number of parties to whom he may have been referring. Prosecutrix had testified on the stand that she had never had intercourse with appellant except from February to April, 1909; that they then separated and were not together any more until from May 20, 1910, to July, 1910. These statements were clearly inadmissible. In order that this evidence could have any bearing in this case it must in some way connect itself with prosecutrix or show by the facts that appellant had her in mind at the time he had the conversation with the two witnesses. Judge Ramsey, in Fuller v. State, 54 Texas Crim. Rep., 454, said:

"Now, upon whom is the burden to show that the threat was directed toward the person slain, or embraced such person? Obviously, upon the State, for no presumptions can be indulged against the appellant. Before the testimony can be admitted, it must appear that the threat was directed toward the person slain." To the same effect see Godwin v. State, 38 Texas Crim. Rep., 466; Holley v. State, 39 Texas Crim. Rep., 301; Garrett v. State, 52 Texas Crim. Rep., 255.

In the Garrett case, supra, it was said: "Without going into a detailed statement of it and the grounds of objection, we are of opinion that this character of threat was not admissible. This has been decided so frequently that we deem it unnecessary to cite authorities. Before a threat supposed to have been made by the accused can be used against him in his trial, the evidence must show that the threat was directed against and individuated the deceased. The fact that 'Guinea' meant negro women is not sufficient." In that case Garrett was charged with killing a negro woman, and it was shown that he had said that he intended to kill a Guinea, and by some of the testimony it was shown the word Guinea meant in that particular neighborhood a negro woman. The admission of this testimony was upon appeal held too general and failed to individuate the deceased, although she was a negro woman. Most of the cases cited are homicide cases, or at least cases in which threats were used where personal difficulties occurred. However, the writer does not see any difference in the principle. Wherever a reference is made by the accused to an injured party, whether it be homicide or any

other character of case, that reference must individuate or connect itself with the alleged injured party. It is none the less so in a seduction than it would be in a homicide case. My brethren seem to draw some distinction or attempt to do so between the two characters of cases. The Hinman case, reported in 59 Texas Crim. Rep., 29, was a case of seduction. A bill of exceptions was reserved to the court permitting the witness Davenport to testify in regard to statements made by appellant, substantially, that he, appellant, was the cause of Miss Barefield being in a pregnant condition, and also statement to Davenport to the effect, in substance, that he contemplated stealing the girl and invoked his assistance. That testimony was held admissible. That testimony directly individuated Miss Barefield. It was a statement by appellant of the fact that he had been having intercourse with Miss Barefield, and by reason of that intercourse she was in a pregnant condition. That testimony was clearly admissible. That case is not in point. If appellant had stated to either Alvis or Thomson that prosecutrix in this case was pregnant on account of his illicit intercourse with her, there would have been no reason for objecting to the testimony, and the Hinman case would be in point.

3. I wish also to enter dissent to that portion of the opinion of the majority in which they hold admissible evidence of several witnesses to the effect that prosecutrix' reputation for chastity was good. This testimony was introduced as original evidence in the case. If appellant had attacked the reputation of prosecutrix at the time of her seduction, then the State would have been justified in offering evidence to show her good reputation. But this had not been done by appellant. In 35 Cyc., 1314, under head of "Seduction," it is said: "In an action by the female for her seduction, the presumption of law is in favor of her virtue. Evidence of her good character has been held inadmissible unless her character is attacked by defendant, and there seems to be no distinction between character and conduct as applied to a female in an action for seduction." There are quite a number of authorities cited in the footnotes to which I refer, but deem unnecessary to collate. Again, on page 1316, same volume of Cyc., it is said, it is not competent to prove the general character of a defendant unless there is attempt to impeach it. This seems to be the well settled rule in Texas. Conway v. State, 33 Texas Crim. Rep., 327; Green v. State, 49 Texas Crim. Rep., 238; Ezell v. State, 65 S. W. Rep., 370.

Judge Harper, in his opinion on motion for rehearing, in support of the correctness of the former opinion and the rulings of the trial court on this proposition, cites the case of Jeter v. State, 52 Texas Crim. Rep., 214, as authority to sustain his position. An inspection of that case will, I believe, justify the statement that it was correctly written upon the propositions involved, but that it has absolutely no bearing upon the question involved in this case. In that case

the defendant was attacking the character and reputation of the prosecutrix, and the question came as to whether or not the evidence introduced for that purpose was legitimate. This court held in the opinion that it was. I do not care to review that case, for the question involved has no application here. The difference between that case and the one in hand is so plainly marked that an inspection of the two cases makes the proposition self-evident. In this case the State introduced evidence to show good reputation and character of prosecutrix before any attack made upon it. In the Jeter case the defendant was attacking the character and standing for virtue of the woman he is alleged to have ravished. The same may be said of the Caviness case, 42 Texas Crim. Rep., 420. And the same point was decided practically in the two cases, Jeter and Caviness. I have always heretofore thought that there was a marked distinction and a wide difference in regard to the introduction of evidence to sustain as original testimony the character of prosecutrix and where the defendant was attacking it. The law presumes the chastity of the female sex. Therefore, to tear it down or to impugn it, there must be an attack made upon it. In fact, it is a fundamental principle of our law that innocence is always to be presumed. It sometimes becomes rather a difficult question where the innocence of the accused may come in conflict with the presumed character of the woman for chastity. The law presumes the woman to be chaste, and it justifies in seduction cases an attack upon it, for if she is unchaste, then there can be no seduction, but until it is attacked in some way, the presumption is that she is chaste. My brethren, as a general proposition, may be right, that the rules in regard to the admission of testimony are the same, whether it is offered for the State or defendant, but that is owing altogether how the question comes. The defendant is never called upon to prove his innocence. The State must prove his guilt. The rules of evidence in that respect would seem to be somewhat different.

Closing this part of my dissent, I wish to say it has always been the rule that neither party to a cause, civil or criminal, can support its witnesses by proof of general reputation or proof of similar statements made by them, or proof of character or reputation of any kind, unless it has been attacked. And I do not believe an exception can be found in the authorities in this State to that statement. Even the Nash case does not go far enough to make the rule laid down in that case an exception. My brethren make a quotation from the same volume of Cyc., from which the quotation that I made above was taken. But I do not believe that any other authority except the opinion in this case can be found laying down the proposition that a more rigid rule will be adopted in the admission of testimony for the protection of property than for the protection of the life or liberty of the citizenship.

4. My brethren devote considerable portion of the opinion on

rehearing to stating in full and commenting upon a bill of exceptions reserved to the entire charge, and the reasons stated for such exceptions, and because there is no ground of objection stated to that portion of the charge with reference to accomplice testimony, they hold there was no exception taken. I do not so understand the record. There are other bills of exception in the record to the charge. Bill No. 19 sets out a special charge requested by appellant, which was refused by the court, submitting an appropriate charge on accomplice testimony and covering defects in the charge of the court. The court refused this and signs the bill which contains the grounds of objection as follows: that said charge was a correct enunciation of the law as applicable to the facts, and for the reason that the issue was not presented in the main charge of the court. There is another bill of exceptions No. 20 on the same question, presenting it still more fully and from a different standpoint. This was refused and exception taken. It occurs to me that the objections to the court's charge, that it was insufficient on the law of accomplice, and two requested instructions asked and refused, with the grounds stated, are sufficient to present the question for discussion and revision. It is not debatable that if the court had considered the matter with reference to the charge on accomplice testimony, the errors are fatal to the conviction. I do not know that it is necessary to cite authorities. The matter has been decided so often in Texas that it would seem like a useless consumption of time to cite the cases, or write further on it. There is not a decision that has been called to my attention since Bell v. State, 36 Texas Crim. Rep., 637, to date, that does not sustain appellant's contention.

5. There is another question that is fully presented by special charges and bill of exceptions. The charges were refused by the court. The law sought to be applied grows out of and is directly pertinent to the testimony of prosecutrix. The issue was raised that prosecutrix willingly consented to the intercourse independent of any promise of marriage. For instance, her testimony with reference to the first act of intercourse is that she and appellant were at her home sitting together, and she sat on his lap and thus consummated the first act of intercourse. There is other testimony along the same line. I deem it unnecessary to go further into the evidence. The court did not charge that if she submitted herself on a conditional promise or through lust or fear or any of those kinds of emotions or feelings, appellant would not be guilty. The question was squarely raised by the evidence. No charge was given by the court. Special requested instructions were asked. They were refused and bills of exception reserved. Under all the authorities in this State the charge was necessary, and failure to give the special charge requested is fatal to conviction. I will cite some of the cases: Cole v. State, 40 Texas, 147; Gorzell v. State, 43 Texas Crim. Rep., 82; Carter v. State, 59 Texas Crim. Rep., 273, 127 S. W. Rep., 215; Sledge v. State, 63

S. W. Rep., 317; Barnes v. State, 37 Texas Crim. Rep., 320; Nolen v. State, 48 Texas Crim. Rep., 436; Simmons v. State, 54 Texas Crim. Rep., 619; Muhlause v. State, 56 Texas Crim. Rep., 288; Spenrath v. State, 48 S. W. Rep., 192; Hinman v. State, 59 Texas Crim. Rep., 29.

6. The court gave two charges as follows: "In this connection you are instructed that a woman can be seduced but once, and you can not convict the defendant for seduction in this case by reason of intercourse with her on May 20, if any he had, or by reason of any intercourse with her, subsequent in their first act of copulation, if any there was, and any such subsequent acts of copulation, if any between the defendant and Annie Slaughter, after the first act of copulation, if any there was, can be considered by you only along with the other evidence in the case in passing upon the guilt or innocence of the defendant, of the offense charged, by reason of their first act of copulation, if any there was."

"Keeping in view the foregoing general instructions, as to the law and the evidence, you are further instructed that if you believe beyond a reasonable doubt that defendant, John Knight, did in San Augustine County, Texas, at any time within three years, before the 6th day of January, 1911, the date when the indictment in this case was presented and filed in this court, seduce Annie Slaughter, who was an unmarried female under the age of twenty-five years at the time, and did then and there obtain carnal knowledge of said Annie Slaughter by means and in virtue of a promise of marriage to her, then you will find defendant guilty."

Exceptions were reserved to this on the ground that it was argumentative, and upon the weight of the evidence, and conflicting and contradictory, and calculated to mislead and confuse the jury. These exceptions were well taken under all the authorities in this State. The last case decided by this court was rendered at the present term on January 21 of this year, in which similar conflicting charges were held error, and the judgment reversed. See Chris Humphrey v. State. See also Blair v. State, 26 Texas Crim. App., 387; Murnutt v. State, 67 S. W. Rep., 508; 12 Cyc., subdivision V, 649; Barrett v. State, 55 Texas Crim. Rep., 182. The Humphrey case decided at the present term was also a seduction case, and the charges in that case and this case are almost identical. In the Humphrey case, supra, the judgment was reversed because of these conflicting charges. The opinion in this case is in conflict with the Humphrey case, and that case not noticed.

Believing most firmly that this case has been tried without due regard to the law of the case, I most respectfully enter my dissent.